2014 ND 62

In the Matter of the Application for DISCIPLINARY ACTION AGAINST David A. OVERBOE, a Person Admitted to the Bar of the State of North Dakota.

Disciplinary Board of the Supreme
Court of North Dakota,
Petitioner

v.

David A. Overboe, Respondent.

Nos. 20130303, 20130304,
20130305, 20130306.

Supreme Court of North Dakota.

April 3, 2014.

Brent J. Edison, Bismarck, N.D., for petitioner.

Kristin A. Overboe, Fargo, N.D., for respondent.

PER CURIAM.

[¶ 1] Attorney David A. Overboe objects to a report of a Hearing Panel of the Disciplinary Board of this Court, recommending that he be disbarred and that he pay the costs of the disciplinary proceeding of $4,134.41. We conclude there is clear and convincing evidence Overboe violated N.D.R. Prof. Conduct 1.7(a), 1.8(j), 4.1, 5.3, 5.5, 8.4(b) and (c), and N.D.R. Lawyer Discipl. 1.2(A)(2) and (3), but there is not clear and convincing evidence he violated N.D.R. Prof. Conduct 1.8(a). We order Overboe be disbarred from the practice of law and pay the costs of the disciplinary proceeding of $4,134.41.

I

[¶ 2] Overboe was admitted to practice law in North Dakota in 1972. On October 27, 2006, an application for Overboe's interim suspension was filed under N.D.R. Lawyer Discipl. 3.4(A), threat of public harm. The application alleged that Overboe was charged with sexual assault in violation of N.D.C.C. § 12.1–20–07(1)(a) and two counts of hiring an individual to engage in sexual activity in violation of N.D.C.C. § 12.1–29–06, relating to allegations Overboe had sexual contact with a female client and sought to exchange sexual favors for the payment of legal fees. This Court concluded sufficient evidence existed to demonstrate misconduct and a substantial threat of irreparable harm to the public, and ordered Overboe's license suspended "until further order of this Court, pending final disposition of a disciplinary proceeding predicated upon the complaint." *In re Discipl. Action Against Overboe*, 2006 ND 249, ¶¶ 13–14, 724

N.W.2d 576. The suspension of Overboe's license to practice law became effective on December 4, 2006.

[¶ 3] In a petition for discipline dated January 25, 2007, file number 4507–SE–0612, Disciplinary Counsel alleged Overboe had sexual contact with various clients and offered to exchange sexual favors for a reduction in legal fees on multiple occasions between 1992 and 2006. The petition included the allegations that were the bases for Overboe's interim suspension. The petition alleged Overboe's conduct violated N.D.R. Prof. Conduct 1.7(a), conflict of interest; N.D.R. Prof. Conduct 1.8(a) and (j), conflict of interest: prohibited transactions; N.D.R. Prof. Conduct 1.5, fees; N.D.R. Prof. Conduct 8.4(a), (b), (f), misconduct; and N.D.R. Lawyer Discipl. 1.2(A)(2) and (8). A hearing panel was appointed in January 2007, and Overboe filed an answer denying the allegations in March 2007.

[¶ 4] In a petition for discipline dated November 29, 2007, file number 4608–SE–0706, Disciplinary Counsel alleged Overboe asked a client for sexual favors in exchange for a reduction in her legal fees. The petition alleged Overboe's conduct violated N.D.R. Prof. Conduct 1.7(a), conflict of interest; N.D.R. Prof. Conduct 1.8(a) and (j), conflict of interest: prohibited transactions; N.D.R. Prof. Conduct 1.5, fees; and N.D.R. Prof. Conduct 8.4(a), misconduct. A hearing panel was appointed in November 2007, and Overboe filed a response denying the allegations in January 2008.

[¶ 5] In a petition for discipline dated August 26, 2008, file number 4542–SE–0702, Disciplinary Counsel alleged Overboe violated professional rules by preparing a durable power of attorney for Dodge Guizzetti, naming Overboe's wife, Debra Over-

boe, as attorney-in-fact for Guizzetti, and by Overboe's involvement in a subsequent property transfer and other financial transactions between Guizzetti and Debra Overboe. The petition alleged Overboe's conduct violated N.D.R. Prof. Conduct 1.7(a), conflict of interest; and N.D.R. Prof. Conduct 1.8, conflict of interest: prohibited transactions; and N.D.R. Lawyer Discipl. 1.2(A)(3). A hearing panel was appointed in September 2008, and Overboe filed an answer denying the allegations in October 2008.

[¶ 6] In a petition for discipline dated September 3, 2009, file number 4826–SE–0810, Disciplinary Counsel alleged Overboe engaged in the unauthorized practice of law by initiating a garnishment action after his license to practice law was suspended. The petition alleged Overboe's conduct violated N.D.R. Prof. Conduct 5.5, unauthorized practice of law; N.D.R. Prof. Conduct 4.1, truthfulness in statements to others; N.D.R. Prof. Conduct 8.4(c), misconduct; and N.D.R. Prof. Conduct 5.3, responsibilities regarding nonlawyer assistants. A hearing panel was appointed in September 2009, and Overboe filed a response denying the allegations in October 2009.

[¶ 7] An amended notice of appointment of hearing panel dated October 3, 2012, was filed and a new hearing panel was appointed for all four cases. In a brief dated July 1, 2013, Overboe moved for dismissal of the charges or in the alternative to be placed on disability inactive status. Overboe argued the unreasonable delay in the proceedings violated his due process rights. He requested the Hearing Panel enter a finding of incapacity to practice law and place him on disability inactive status because he suffers from post-traumatic stress disorder.

[¶ 8] On July 9, 2013, the Hearing Panel held a hearing on the petitions. After the hearing, the Hearing Panel issued its Findings of Fact, Conclusions of Law and Recommendation. The Hearing Panel found Overboe violated N.D.R. Prof. Conduct 1.7(a), 1.8(a) and (j), 4.1, 5.3, 5.5, 8.4(b) and (c), and N.D.R. Lawyer Discipl. 1.2(A)(2) and (3). The Hearing Panel recommended Overboe be disbarred and pay the costs and expenses of the proceedings of $4,134.41.

## II

[¶ 9] This Court reviews disciplinary proceedings de novo on the record. *In re Discipl. Action Against McDonald,* 2000 ND 87, ¶ 13, 609 N.W.2d 418. Disciplinary counsel has the burden to prove each alleged violation by clear and convincing evidence. *In re Discipl. Action Against Lee,* 2013 ND 151, ¶ 9, 835 N.W.2d 836. Clear and convincing evidence is evidence that leads to a firm belief or conviction the allegations are true. *Id.* "We give due weight to the findings, conclusions, and recommendations of the [hearing panel], but we do not act as a 'rubber stamp' for those findings and recommendations." *McDonald,* at ¶ 13. We give deference to the hearing panel's findings on matters of conflicting evidence when the panel has heard the witnesses and observed their demeanor. *Id.* We also give deference to the hearing panel's findings on the witnesses' credibility because the hearing panel has the opportunity to hear the witnesses testify and observe their demeanor. *Lee,* at ¶ 9. We consider each case on its own facts to determine what discipline is warranted. *McDonald,* at ¶ 13.

## III

[¶ 10] Overboe argues he was denied due process because an unreasonable delay occurred in the prosecution of the disciplinary actions. He contends there was a seven-year lapse in the prosecution, and

his ability to present a defense to the allegations was prejudiced by the lapse in time. He contends he was unable to properly defend himself against the allegations because his memory had diminished, other witnesses' memories diminished, and some of the witnesses died or were no longer available to testify.

[¶ 11] An attorney subject to disciplinary proceedings is entitled to procedural due process. *In re Discipl. Action Against Dvorak*, 1998 ND 134, ¶ 8, 580 N.W.2d 586. This Court has previously considered whether an attorney's due process rights were violated by a lengthy delay between the petition for discipline and the hearing, and we have said that a long delay is troubling but there must be more than a delay alone to result in a dismissal of the petition:

> Due process, as applied to disciplinary proceedings involving attorneys, requires notice of the charges and an opportunity to be heard.... Beyond these requirements, there is no authority to suggest that the expiration of a time period would establish a constitutional infirmity mandating dismissal of all charges. There may be hypothetical factual situations where this expiration of time destroys the fundamental fairness of the entire disciplinary process; however, there is no evidence in the present case to warrant such determination.

*McDonald*, 2000 ND 87, ¶ 33, 609 N.W.2d 418 (quoting *In re Wireman*, 270 Ind. 344, 367 N.E.2d 1368, 1370 (1977)); *see also Dvorak*, at ¶ 24 (considering whether the delay in the proceedings resulted in a "grave injustice").

[¶ 12] In this case, a delay of more than six years occurred between the first petition for discipline being filed and the hearing and almost four years between the filing of the last petition and the hearing. Disciplinary Counsel does not allege that Overboe was responsible for the delay. The delay is troubling; however, the delay alone is not sufficient to violate Overboe's due process rights. The delay must destroy the fundamental fairness of the entire process. *McDonald*, 2000 ND 87, ¶ 33, 609 N.W.2d 418.

[¶ 13] Overboe contends he was prejudiced by the delay in file number 4507–SE–0612 because two witnesses, S.K. and A.R., no longer live in North Dakota and were unavailable for cross-examination. However, evidence of Overboe's criminal convictions resulting from S.K. and A.R.'s allegations was admitted into evidence at the hearing. The convictions alone are sufficient to find Overboe violated professional rules of conduct. There was also other evidence of conduct supporting the bases for the petition in that file, including testimony from other witnesses. Overboe has not established that he was prejudiced by the delay in that case.

[¶ 14] Overboe contends he was prejudiced by the delay in file number 4542–SE–0702 because key witnesses had died or were unavailable. Overboe contends he could not adequately defend against the allegations related to Dodge Guizzetti because Guizzetti died before the hearing and was not available for cross-examination. Guizzetti died on May 8, 2008. The petition for discipline was dated August 26, 2008. Guizzetti died before the petition for discipline was filed and would not have been available as a witness regardless of the delay between the petition and the disciplinary hearing. Overboe was not prejudiced by the delay.

[¶ 15] Overboe also contends Guizzetti's niece was a critical witness to his defense made unavailable by the delay. He claims she was hospitalized in intensive

care at the time of the hearing and she later died. However, it is not clear what Guizzetti's niece would have testified to or how the absence of her testimony prejudiced Overboe. Overboe testified about meeting with Guizzetti and discussing the power of attorney and property transfers. He testified that he only met with Guizzetti one time and his wife was with him during the meeting. There was no evidence that Guizzetti's niece was present when Overboe met with him. It is not clear that the absence of her testimony prejudiced Overboe. Overboe has failed to establish he was prejudiced by the inability to question Guizzetti's niece.

[¶ 16] Overboe also argues he was prejudiced by the delay in file numbers 4608–SE–0706 and 4826–SE–0810, because his former secretary planned to testify but was ill at the time of the hearing and was not present. The witness's unavailability was not related to the delay in the proceedings.

[¶ 17] Overboe failed to establish that he was prejudiced by the significant delay in the proceedings. The alleged misconduct in this case is serious. Under these circumstances, we conclude the delay in the proceedings did not destroy the fundamental fairness of the entire disciplinary process. We conclude Overboe's due process rights were not violated.

## IV

[¶ 18] Overboe argues there is not clear and convincing evidence that he engaged in misconduct.

### File Nos. 4507–SE–0612 and 4608–SE–0706

[¶ 19] The petitions for discipline in both files allege Overboe had sexual contact with multiple clients and offered to exchange his legal services for sexual favors. The Hearing Panel made findings about the allegations in each petition:

### File No. 4507–SE–0612

On or about the month of February, 2006, Overboe engaged in conduct which constituted a substantial step toward knowingly having sexual contact with a client, [S.K.], at his office, in that Overboe grabbed her around the lower back and buttock area and tried to kiss her on the mouth, to the annoyance and alarm of [S.K.]. In addition to any other violation of the North Dakota Rules of Professional Conduct, said conduct violated [N.D.C.C. §§ ] 12.1–06–01, 12.1–20–07(1)(a), and/or 12.1–31–01[.]

On July 12, 2007, Overboe entered an *Alford* plea to the charge of Disorderly Conduct, a Class B Misdemeanor. The *Alford* plea was entered pursuant to an Information which set forth the charge as follows:

*Count 1(b):* DISORDERLY CONDUCT in violation of Section 12.1–31–01, N.D.C.C. in that on or about the month of February 2006: ... the defendant, *DAVID ARDELL OVERBOE, grabbed a client, [S.K.], around her lower back and buttock area in his office ... pulled her toward him and tried to kiss her on the mouth, as a result of which [S.K.] was harassed, annoyed, or alarmed by the defendant's behavior.* (Emphasis applied)

On or about October 14, 2006, Overboe had sexual contact with a client, [A.R.], in that Overboe touched her buttocks on the way to his office, and at his office rubbed his groin against her body and grabbed her buttocks. In addition to any other violation of the North Dakota Rules of Professional Conduct, said conduct violated [N.D.C.C.] § 12.1–20–07(1)(a)[.]

On or about October 23, 2006, Overboe offered to hire [A.R.] with the inten-

tion of engaging in sexual activity, in his office, through the offer of exchanging sexual favors for a reduction in legal fees. In addition to any other violation of the North Dakota Rules of Professional Conduct, said conduct violated [N.D.C.C.] § 12.1–29–06[.]

On July 2, 2007, Overboe entered a plea of guilty to the charge of Disorderly Conduct, a class B Misdemeanor. The guilty plea was entered pursuant to an Amended Information which set forth the charges as follows:

*Count 1:* DISORDERLY CONDUCT in violation of N.D.C.C. § 12.1–31–01, in that on or about 14 October 2006 ... the defendant, *DAVID ARDELL OVERBOE, took a client [A.R.], to his office ... touched her buttocks on the way into the office, rubbed his groin against her body, and again grabbed her buttocks, as a result of which [A.R.] was harassed, annoyed or alarmed by the defendant's behavior.* (Emphasis added)

*Count 2:* DISORDERLY CONDUCT in violation of N.D.C.C. § 12.1–31–01, in that on or about 23 October 2006, ... the defendant, *DAVID ARDELL OVERBOE, offered to hire, [A.R.], for sexual activity in his office ... as a result of which [A.R.] was harassed, annoyed or alarmed by the defendant's behavior.* (Emphasis added)

In approximately 1997 or 1998, Overboe represented [W.M.]. She had been referred to Overboe through a legal services program. During a meeting at his office, Overboe made remarks to [W.M.] questioning whether she was breast feeding, and other remarks that made [W.M.] uncomfortable. [W.M.] testified that Overboe had a fridge, and a couch or bed, in his office.

In approximately 1999, [M.R.] was referred to Overboe by Legal Assistance of North Dakota. He met with her after regular business hours. Overboe had chilled wine, which he was drinking, and which he offered to [M.R.]. Overboe told her of his personal life and personal problems he was having. He told her how much she would have to pay if the matter had not been referred by Legal Aid. Overboe's comments made [M.R.] fearful of being alone with Overboe.

In approximately 1995 and 1996, Overboe represented the employer of [M.B.]. On one occasion, [M.B.] took papers for her employer to Overboe at his office. While [M.B.] was at his office, Overboe walked around his desk, unzipped his pants, and exposed himself. [M.B.] was appalled by Overboe's conduct.

. . . .

### File No. 4608–SE–0706

Beginning in early 2005, Overboe represented [R.L.] in a divorce matter. During the course of the representation, Overboe asked [R.L.] for sexual favors in exchange for reducing her financial obligation to him. [R.L.] testified that she initially thought Overboe was joking but realized he was serious when he unzipped his pants and exposed himself. The Hearing Panel found Overboe violated N.D.R. Prof. Conduct 1.7(a), conflict of interest; N.D.R. Prof. Conduct 1.8(j), conflict of interest: prohibited transactions; N.D.R. Prof. Conduct 8.4(b), misconduct; and N.D.R. Lawyer Discipl. 1.2(A)(2).

[¶ 20] Rule 1.7(a), N.D.R. Prof. Conduct, prohibiting conflicts of interest, provides, "[a] lawyer shall not represent a client if the lawyer's ability to consider, recommend, or carry out a course of action on behalf of the client will be adversely affected by the lawyer's responsibilities to

another client or to a third person, or by the lawyer's own interests." Rule 1.8(j), N.D.R. Prof. Conduct, prohibits a lawyer from having sexual relations with a client unless a consensual sexual relationship existed between the lawyer and client when the client-lawyer relationship began. Rule 8.4(b), N.D.R. Prof. Conduct, provides that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Under N.D.R. Lawyer Discipl. 1.2(A)(2), a lawyer may be disciplined for misconduct, including "[c]ommitting a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer[.]"

[¶ 21] Overboe pled guilty to the disorderly conduct charges based on the allegations that he rubbed his groin on A.R.'s body and offered to hire her for sexual activity. He also entered an *Alford* plea of guilty to another charge of disorderly conduct based on the allegation that he attempted to have sexual contact with S.K. The convictions violate N.D.R. Lawyer Discipl. 1.2(A)(2) and N.D.R. Prof. Conduct 8.4(b). The testimony from R.L., W.M., M.R., and M.B. supports the panel's findings. Although Overboe denied the allegations and presented conflicting testimony, we defer to the Hearing Panel's findings on conflicting evidence because the Panel had an opportunity to hear the witnesses' testimony and observe their demeanor. *See McDonald*, 2000 ND 87, ¶ 13, 609 N.W.2d 418. Upon reviewing the entire record, we conclude clear and convincing evidence supports Overboe's conduct violated N.D.R. Prof. Conduct 1.7(a), 1.8(j), 8.4(b), and N.D.R. Lawyer Discipl. 1.2(A)(2).

### File No. 4542–SE–0702

[¶ 22] The petition contained allegations about Overboe's handling of Gu-izzetti's power of attorney and property transactions. Overboe and Joe Larson, an attorney who represented Guizzetti prior to Guizzetti's death, both testified about the allegations at the hearing. The Hearing Panel found:

> Overboe prepared a Durable General Power of Attorney for Dodge Guizzetti, who was then approximately ninety-two years of age. The power of attorney was signed by Mr. Guizzetti on September 28, 2006, before a notary public. It named Overboe's wife, Deborah, as Guizzetti's attorney-in-fact.
>
> On or about October 4, 2006, Deborah, while accompanied by Overboe, appeared at the U.S. Bank in Jamestown, North Dakota, and transferred $190,000 from financial accounts owned by Guizzetti into a certificate of deposit payable to Dodge Guizzetti and Debra R. Overboe or to Dodge Guizzetti and upon his death to Debra R. Overboe. These transactions occurred without consideration and without the knowledge and consent of Guizzetti.
>
> On October 5, 2006, attorney David Overboe contacted Dennis Ova and James Emo by letter and informed them that the power of attorney which Guizzetti had granted them had been revoked and that Debra Overboe was now Guizzetti's attorney-in-fact.
>
> On October 6, 2006, Debra, using the Durable General Power of Attorney dated September 28, 2006, and acting as the attorney-in-fact of Guizzetti, conveyed without consideration and the knowledge and consent of Guizzetti approximately 640 acres of Stutsman County real estate owned by Guizzetti to herself. The Quit Claim Deed was drafted by Overboe.

The Hearing Panel found Overboe's conduct violated N.D.R. Prof. Conduct 1.7(a),

conflict of interest; N.D.R. Prof. Conduct 1.8(a), conflict of interest: prohibited transactions; N.D.R. Prof. Conduct 8.4(c); and N.D.R. Lawyer Discipl. 1.2(A)(3).

[¶ 23] Rule 1.7(a), N.D.R. Prof. Conduct, prohibits a lawyer from representing a client when the lawyer's own interests or responsibilities to a third party will adversely affect the lawyer's representation of the client. *See also* N.D.R. Prof. Conduct 1.7 cmt. "When a lawyer cannot consider, recommend, or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests, the representation will be adversely affected and must be declined or terminated." N.D.R. Prof. Conduct 1.7 cmt. "A lawyer is required to decline representation of a client if the lawyer's own financial, business, property or personal interests are likely to affect adversely the advice to be given or services to be rendered to a potential client." *Id.*

[¶ 24] Evidence presented shows Overboe drafted the power of attorney for Guizzetti and Guizzetti was his client. The power of attorney appointed Debra Overboe, Overboe's wife, as Guizzetti's attorney-in-fact. Overboe testified he drafted the quit claim deed transferring Guizzetti's real property to Debra Overboe. The evidence established Guizzetti did not know about or consent to the transfer of his property to Debra Overboe. Clear and convincing evidence supports that Overboe's conduct violated N.D.R. Prof. Conduct 1.7(a).

[¶ 25] Under N.D.R. Prof. Conduct 1.8(a), a lawyer is prohibited from entering into certain transactions with a client:

Except for standard commercial transactions involving products or services that the client generally markets to others, a lawyer shall not enter into a business, financial, or property transaction with a client unless:

(1) the transaction is fair and reasonable to the client; and

(2) after consultation, including advice to seek independent counsel, the client consents to the transaction.

"A lawyer's legal skill and training, together with the relationship of trust and confidence between lawyer and client, create the possibility of overreaching when the lawyer participates in a business, property or financial transaction with a client[.]" N.D.R. Prof. Conduct 1.8 cmt.

[¶ 26] Rule 1.8(a), N.D.R. Prof. Conduct, only applies to property transactions a lawyer enters into with a client. The plain language of the rule prohibits a lawyer from entering into a business, financial, or property transaction with a client. In this case, there is no evidence Overboe entered into a property or financial transaction with Guizzetti. The Hearing Panel found Debra Overboe transferred $190,000 from financial accounts owned by Guizzetti into a certificate of deposit payable to Dodge Guizzetti and Debra R. Overboe or to Dodge Guizzetti and upon his death to Debra R. Overboe. The Hearing Panel also found Debra Overboe used the Durable General Power of Attorney and acted as the attorney-in-fact to convey Guizzetti's real estate to herself without consideration and without Guizzetti's knowledge and consent. While the evidence establishes Overboe was aware of these transactions, the transactions were not between Overboe and Guizzetti. The evidence only establishes Overboe prepared the quit claim deed transferring the property. The evidence presented does not show Overboe entered into a property or financial transaction with Guizzetti. Disciplinary Counsel has not cited any legal authority to support a finding that a lawyer violates N.D.R. Prof. Conduct 1.8(a) when a property or financial transac-

tion occurs between the lawyer's client and the lawyer's spouse.

[¶ 27] The Hearing Panel did not consider whether Overboe's conduct violated any other provision of N.D.R. Prof. Conduct 1.8. However, N.D.R. Prof. Conduct 1.8(c) applies when a lawyer prepares an instrument giving a person related to the lawyer a substantial gift from a client:

> A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer any substantial gift from a client, including a testamentary gift, unless the client is related to the donee. For purposes of this paragraph, related persons include a spouse, child, grandchild, parent, grandparent, or other relative or individual with whom the lawyer or the client maintains a close, familial relationship.

The rule requires a different lawyer prepare any legal instrument that is required to effectuate a substantial gift from a client to the lawyer or a person related to the lawyer, unless the client is a relative of the donee. N.D.R. Prof. Conduct 1.8 cmt. Rule 1.8(c), N.D.R. Prof. Conduct applies in this case but did not prohibit Overboe's conduct, because there was evidence Guizzetti was Debra Overboe's uncle.

[¶ 28] Although Overboe's conduct did not violate N.D.R. Prof. Conduct 1.8(a) or (c), we conclude it did violate N.D.R. Lawyer Discipl. 1.2(A)(3) as alleged in the petition for discipline. Rule 1.2(A)(3), N.D.R. Lawyer Discipl., states a lawyer may be disciplined for misconduct, including engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. *See also* N.D.R. Prof. Conduct 8.4(c) (discussing professional misconduct for lawyer engaging in dishonesty, fraud, deceit, or misrepresentation that reflects adversely on the lawyer's fitness). The Hearing Panel found Guizzetti did not know or consent to the transfer of his financial accounts or his real property to Debra Overboe, and the evidence submitted supports this finding. Although conflicting evidence exists as to whether Guizzetti knew and consented to the transfers, we give deference to the Hearing Panel's findings on matters of conflicting evidence and on witness credibility when the Panel heard the witnesses and observed their demeanor. *See Lee*, 2013 ND 151, ¶ 9, 835 N.W.2d 836. Overboe testified that he prepared the quit claim deed transferring Guizzetti's real property to Debra Overboe. Clear and convincing evidence supports that Overboe's conduct violated N.D.R. Lawyer Discipl. 1.2(A)(3).

*File No. 4826–SE–0810*

[¶ 29] The petition contained allegations that Overboe practiced law while his license was suspended. The Hearing Panel found:

> By letter dated September 24, 2008, Overboe served a Garnishment Summons, Notice to Defendant, and Continuing Lien, along with a Garnishment Disclosure, Interrogatories to Garnishee on Strata Corporation, which purported to effectuate a garnishment of wages of an employee of Strata Corporation in a matter entitled *David A. Overboe v. Todd D. Kubas v. Strata Corporation*, supposedly venued in District Court, County of Cass, State of North Dakota. Overboe sought $3,151.73.
>
> There was no case with the name Overboe's garnishment indicated. Rather, there was a Fourth Amended Judgment in a Ward County case entitled *Todd Donovan Kubus [sic] v. Lori Lee Kubas* ... which provided that defendant would recover attorney fees from plaintiff in the amount of $2,583.47. Overboe was the attorney for the defendant in that matter. Overboe was under suspension from the practice of law at

the time of the service of the garnishment papers. *Disciplinary Board v. Overboe*, 2006 ND 249, 724 N.W.2d 576 (interim suspension effective December 4, 2006).

The Hearing Panel found Overboe violated N.D.R. Prof. Conduct 5.5, unauthorized practice of law; N.D.R. Prof. Conduct 4.1, truthfulness in statements to others; N.D.R. Prof. Conduct 5.3, responsibilities regarding nonlawyer assistants; and N.D.R. Lawyer Discipl. 1.2(A)(3); and N.D.R. Prof. Conduct 8.4(c).

[¶ 30]   Rule 5.5(a), N.D.R. Prof. Conduct, prohibits a lawyer from practicing law in a jurisdiction when doing so violates the regulation of the legal profession in that jurisdiction.   Under N.D.R. Prof. Conduct 4.1, while representing a client, a lawyer shall not make a statement of fact or law to a third party that the lawyer knows is false.   Rule 5.3(b), N.D.R. Prof. Conduct, explains a lawyer's responsibilities for the conduct of a nonlawyer assistant and states "the lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the nonlawyer's conduct is compatible with the professional obligations of the lawyer[.]"   Rule 8.4(c), N.D.R. Prof. Conduct, and N.D.R. Lawyer Discipl. 1.2(A)(3) state a lawyer may be disciplined for engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

[¶ 31]   Overboe argues he did not violate N.D.R. Prof. Conduct 4.1, 5.5, 8.4(c), and N.D.R. Lawyer Discipl. 1.2(A)(3) because he was not practicing law, his secretary was performing collections for him, and he failed to properly supervise her activities.   Overboe argues his secretary continued to collect fees from his former clients after he was suspended and was winding up his practice and she continued to use the same forms he used before he was suspended.   Overboe testified he did not properly supervise his secretary, she did not handle the collection properly, he immediately corrected the situation when it was brought to his attention, and it would not have happened if he had properly supervised his secretary.   He argues the only violation he can be held liable for is the violation of N.D.R. Prof. Conduct 5.3 and his failure to ensure that his secretary's work was compatible with professional obligations.

[¶ 32]   Overboe's license was suspended on December 4, 2006.   The evidence shows Overboe sent Strata Corporation a letter dated September 24, 2008, and served a Garnishment Summons, Interrogatories, and Garnishment Disclosure form on Strata Corporation.   The evidence also shows Overboe sent Todd Kubas a letter dated September 2, 2008, and served a Notice Before Garnishment of Wages.   Allen Flaten, an attorney representing Strata Corporation, testified Strata Corporation contacted him for assistance with the garnishment action to ensure withholding funds from Kubas' wages was proper.   Flaten testified he was unable to find a judgment to substantiate the issuance of the Garnishment Summons, he found a judgment for a third party but not a judgment for Overboe, he sent Overboe a letter requesting Overboe immediately provide Strata Corporation with a written acknowledgment of the withdrawal and release of the Garnishment Summons, and Overboe complied with the request.   Overboe testified that he represented Kubas' ex-spouse in an action against Kubas, his client was awarded attorney's fees, the judgment was for his client, and his client was supposed to pay him.

[¶ 33]   Overboe was suspended from the practice of law at the time that he initiated the garnishment action.   Overboe falsely represented that there was a judg-

ment in his favor against Kubas. Overboe failed to make reasonable efforts to ensure his secretary's conduct was compatible with his professional obligations. We conclude there is clear and convincing evidence Overboe's conduct violated N.D.R. Prof. Conduct 4.1, 5.3, 5.5, and 8.4(c), and N.D.R. Lawyer Discipl. 1.2(A)(3).

## V

[¶ 34] Overboe argues the Hearing Panel erred in denying his application to be transferred to disability inactive status under N.D.R. Lawyer Discipl. 5.1.

[¶ 35] Rule 5.1, N.D.R. Lawyer Discipl., provides the procedures for a lawyer to be transferred to disability inactive status or incapacitated status:

A. Incapacity. If a lawyer is judicially declared to be incapacitated or is involuntarily committed on the grounds of incapacity or disability, the court, upon proper proof of the fact, shall enter an order immediately transferring the lawyer to disability inactive status until further order of the court. A copy of the order must be served upon the lawyer, a guardian or conservator (if any), and the director of any institution to which the lawyer has been committed.

B. Inability to Defend.

(1) If a lawyer alleges inability to assist in the defense of a disciplinary proceeding due to mental or physical incapacity, the court shall immediately transfer the lawyer to disability inactive status pending determination of the incapacity.

(2) If the court determines the claim of inability to defend is valid, the disciplinary proceeding must be deferred and the lawyer retained on disability inactive status until the court subsequently considers a petition for transfer of the lawyer to active status.

(3) If the court determines the claim of inability to defend is invalid, it shall take any action it deems proper and advisable, including a direction for the resumption of the disciplinary proceedings against the lawyer.

C. Incapacity to Practice Law. Information relating to a lawyer's physical or mental condition which adversely affects the ability to practice law, as distinguished from the ability to defend, must be investigated and, where warranted, formal proceedings must be initiated to determine whether the lawyer should be transferred to incapacitated status. The hearings must be conducted in the same manner as disciplinary proceedings, except that all such proceedings are confidential. The court may take or direct whatever action it deems necessary or proper to determine whether the lawyer is incapacitated, including the examination of the lawyer by qualified medical experts designated by the court. If, upon due consideration of the matter, the court concludes that the lawyer is incapacitated from continuing to practice law, it shall enter an order transferring the lawyer to incapacitated status until further order of the court. Incapacitated status is a disability status for all purposes under these rules. All pending disciplinary proceedings against the lawyer must be investigated as if the lawyer were still on active status. The court shall provide for such notice of incapacity proceedings to the lawyer as it deems proper and may appoint an attorney to represent the lawyer.

[¶ 36] The Hearing Panel denied Overboe's request to be transferred to inactive disability status, finding:

Within days of the hearing, Overboe suggested that he should be transferred to disability inactive status under N.D.R. Lawyer Discipl. 5.1. The hearing panel denied the application because Overboe failed to properly petition the Supreme

Court for transfer to disability inactive status. Further, during the hearing, it was obvious to the Hearing Panel that Overboe was not incompetent and was fully able to recall significant details regarding testimony provided at the hearing. Overboe was very much able to assist with his own defense. The Panel maintains that Overboe's claim of disability was nothing more than an attempt to thwart the hearing at the eleventh hour.

[¶ 37] Overboe attached a copy of a decision from the Department of Veterans Affairs placing him on disability status with his request to be transferred to disability inactive status. The Veterans Affairs decision concluded Overboe has post-traumatic stress disorder, resulting from his combat experience in Vietnam. The decision stated an examination conducted in October 2010 showed Overboe's diagnosed psychiatric illness results in social and occupational impairments due to symptoms of nightmares, mood blunting, depression, suicidal ideation, sleep impairment, avoidant behaviors, intrusive thoughts, diminished concentration, memory impairment, a loss of interest in pleasurable activities, emotional numbing, hypervigilance, an exaggerated startle response, inappropriate violently verbal outbursts, crying spells, social withdrawal and isolation, periods of emotional distress, hyperarrousal, a lack of any close friends, and a near complete inability to make new social relationships due to adjustment problems. The decision also stated Overboe was competent to handle the distribution of his Veterans Affairs' funds.

[¶ 38] Overboe contends this evidence was sufficient to determine his claim of inability to defend was valid and supports placing him on disability inactive status under *In re Finstad*, 2013 ND 21. In *Finstad*, 2013 ND 21, ¶ 1, the attorney requested a transfer to incapacitated status under N.D.R. Lawyer Discipl. 5.1(C), claiming his ability to practice law was adversely affected by severe and chronic symptoms of post-traumatic stress disorder, and he provided a letter from his treating physician supporting his belief that he was unable to practice law. This Court ordered the attorney be placed on incapacity to practice law status under N.D.R. Lawyer Discipl. 5.1(C). *Finstad*, at ¶ 3.

[¶ 39] However, this case is different from *Finstad*. The attorney in *Finstad* applied for disability status due to inability to practice law; the attorney was not requesting disability inactive status due to an inability to defend himself in a disciplinary proceeding under N.D.R. Lawyer Discipl. 5.1(B). Rule 5.1(B) and (C), N.D.R. Lawyer Discipl., are different and have different requirements. Overboe was required to establish an inability to assist in his defense in the disciplinary proceeding due to mental or physical incapacity and not that his physical or mental condition adversely affects his ability to practice law. Furthermore, pending disciplinary proceedings are handled differently under each provision. All disciplinary proceedings against an attorney continue as if the attorney is still on active status when an attorney is transferred to disability status due to inability to practice law under N.D.R. Lawyer Discipl. 5.1(C). However, disciplinary proceedings against an attorney who validly claims an inability to defend are deferred until the lawyer is transferred to active status. N.D.R. Lawyer Discipl. 5.1(C)(2).

[¶ 40] Although the evidence Overboe presented may have established that his mental condition adversely affects his ability to practice law, it did not establish he is unable to assist in his defense due to men-

tal incapacity. Overboe also contends he was prejudiced at the hearing because he did not have a judicial finding of disability or incapacity and only had medical findings from a physician about his diagnosis of post-traumatic stress disorder; however, a judicial finding of disability or incapacity is not required to establish a claim of inability to defend under N.D.R. Lawyer Discipl. 5.1(B). We conclude Overboe failed to present sufficient evidence to establish an inability to assist in his defense. The Hearing Panel did not err in denying Overboe's application.

## VI

[¶ 41] The Hearing Panel recommended Overboe be disbarred. Overboe does not argue a lesser sanction is appropriate. We consider the North Dakota Standards for Imposing Lawyer Sanctions to determine the appropriate sanction for a violation of the professional rules of conduct. *In re Discipl. Action Against Giese,* 2003 ND 82, ¶ 25, 662 N.W.2d 250.

[¶ 42] In cases involving conflicts of interest, disbarment is generally appropriate when the lawyer represents a client knowing the lawyer's interests are adverse to the client's interests or simultaneously represents clients that the lawyer knows have adverse interests with the intent to benefit the lawyer or another and causes serious or potentially serious injury to the client. N.D. Stds. Imposing Lawyer Sanctions 4.31. Disbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potential serious injury. N.D. Stds. Imposing Lawyer Sanctions 4.61. Under N.D. Stds. Imposing Lawyer Sanctions 5.11(b), disbarment is generally appropriate when "a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that

seriously adversely reflects on the lawyer's fitness to practice." In cases involving the unauthorized practice of law, disbarment is generally appropriate when the lawyer "knowingly engages in conduct that is a violation of a duty owed to the profession with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system." N.D. Stds. Imposing Lawyer Sanctions 7.1.

[¶ 43] The Hearing Panel found various aggravating factors under N.D. Stds. Imposing Lawyer Sanctions 9.22 precluded a lesser sanction, including Overboe's prior disciplinary offenses, his dishonest or selfish motive, his pattern of misconduct and multiple offenses, his refusal to acknowledge the wrongful nature of his conduct, the vulnerability of the victims, and his substantial experience in the practice of law.

[¶ 44] Under the facts of this case, we conclude disbarment is the appropriate sanction for Overboe's misconduct and violations of the professional rules of conduct.

## VII

[¶ 45] We order Overboe is disbarred from the practice of law in North Dakota effective immediately. Overboe is ordered to pay the costs of the disciplinary proceeding of $4,134.41 within sixty days, payable to the Secretary of the Disciplinary Board, Judicial Wing, 1st Floor, 600 East Boulevard Avenue, Bismarck, ND 58505–0530. Overboe must comply with N.D.R. Lawyer Discipl. 6.3 regarding notice. Reinstatement is governed by N.D.R. Lawyer Discipl. 4.5.

[¶ 46] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, CAROL

RONNING KAPSNER, DALE V. SANDSTROM, and DANIEL J. CROTHERS, JJ., concur.