STATE OF MINNESOTA

IN SUPREME COURT

A14-1607

Original Jurisdiction                                                                  Per Curiam


In re Petition for Disciplinary Action against                        Filed: July 29, 2015
David A. Overboe, a Minnesota Attorney,                  Office of Appellate Courts
Registration No. 83318

_____

Martin A. Cole, Director of the Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

David A. Overboe, Fargo, North Dakota, pro se.

_____

S Y L L A B U S

1.      The North Dakota disciplinary proceedings were fundamentally fair and consistent with due process.

2.      Disbarment is the appropriate reciprocal discipline to impose on the attorney in this case.

O P I N I O N

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action seeking reciprocal discipline against respondent David A. Overboe pursuant to Rule 12(d) of the Rules on Lawyers Professional Responsibility (RLPR). Overboe was disbarred by the North Dakota Supreme Court on April 3, 2014. Because

1

we conclude that the North Dakota disciplinary proceedings were fundamentally fair and consistent with due process, and disbarment is not substantially different from the discipline warranted in Minnesota for the same misconduct, we disbar Overboe from the practice of law in Minnesota.

Overboe was admitted to practice law in North Dakota in 1972, and in Minnesota in 1980. During the relevant time period, Overboe's law practice was located in North Dakota. In March 2008 we suspended Overboe from the practice of law for unrelated misconduct, subject to his right to seek reinstatement after 1 year. *In re Overboe (Overboe I)*, 745 N.W.2d 852, 869 (Minn. 2008).[1] Overboe did not seek reinstatement, and is currently suspended in Minnesota.

In October 2006 an application was filed with the North Dakota Supreme Court requesting Overboe's interim suspension on the ground that Overboe had been charged with sexual assault and two counts of hiring an individual to engage in sexual activity, a violation of the North Dakota criminal code. The court concluded there was sufficient evidence to demonstrate misconduct and a threat of harm to the public, and suspended Overboe's license effective December 4, 2006, pending final disposition of disciplinary proceedings.

---

[1] We suspended Overboe for deceptively labeling a personal account that contained only his funds as a trust account to shield his funds from judgment creditors, commingling client funds and personal funds in an Interest on Lawyers Trust Account, and making misrepresentations to and failing to cooperate with the Office of Lawyers Professional Responsibility. *Overboe I*, 745 N.W.2d at 856.

Subsequently, four petitions for discipline were filed with the North Dakota Supreme Court between January 2007 and September 2009 alleging various instances of misconduct. Overboe moved for dismissal of the charges on the basis that the delay in the prosecution of the disciplinary actions violated his due process rights, and requested that he be placed on disability inactive status due to his incapacity to practice law because he suffers from post-traumatic stress disorder (PTSD). The panel denied the motion and request, and the matter proceeded to a hearing on the petitions. Ultimately, the panel concluded Overboe committed the misconduct alleged in the four petitions and that several aggravating factors were present. The panel recommended that Overboe be disbarred.

Overboe appealed to the North Dakota Supreme Court, arguing that (1) he was denied due process because of the delay in the prosecution of the disciplinary actions; (2) there was not clear and convincing evidence he engaged in the alleged misconduct; and (3) the panel erred in denying his request to be transferred to disability inactive status, and therefore disbarment was not warranted. *In re Overboe (Overboe II)*, 844 N.W.2d 851, 855-63 (N.D. 2014).

The North Dakota Supreme Court affirmed all but one of the panel's findings and conclusions and ordered that Overboe be disbarred. *Id.* at 865. The court concluded that the delay in the commencement of the attorney disciplinary proceedings did not violate Overboe's due process rights, *id.* at 857, that Overboe failed to present sufficient evidence to support his application to be transferred to disability inactive status, *id.* at 864-65, and that there was clear and convincing evidence both that Overboe committed

3

the alleged misconduct in violation of the rules of professional conduct and to support the aggravating factors.[2]  *Id.* at 865.

Specifically, the court concluded there was clear and convincing evidence that Overboe had unwelcome sexual contact with multiple clients, including groping and exposing himself to them, and had offered to reduce his legal fees in exchange for sexual favors.  *Id.* at 857-58.  The evidence presented established that Overboe entered an *Alford* plea and was convicted of one count of misdemeanor disorderly conduct for sexual conduct that occurred in February 2006 involving a client.  *Id.* at 857.  Overboe also pleaded guilty to two counts of disorderly conduct for sexual conduct that occurred in October 2006 involving another client.  *Id.* at 858.  Evidence was also presented regarding unwelcome sexual incidents involving four additional clients, which occurred on various dates between 1995 and 1999.  *Id.*  Overboe's actions violated the rules regarding conflicts of interest and criminal acts by an attorney, and the rule prohibiting sexual relations with a client.  *Id.* at 859.

The court also concluded there was clear and convincing evidence that Overboe prepared a durable power of attorney for D.G., who was then 92 years of age.  *Id.*  The power of attorney was signed by D.G. and named Overboe's wife, Debra, as D.G.'s attorney-in-fact.  *Id.*  Debra and Overboe then went to a bank, and Debra used the power of attorney to transfer $190,000 from D.G.'s financial accounts into a certificate of

---

[2]    The aggravating factors were Overboe's disciplinary history, his dishonest or selfish motive, his pattern of misconduct and multiple offenses, his refusal to acknowledge the wrongful nature of his misconduct, the vulnerability of his victims, and his substantial experience in the practice of law.  *Overboe II*, 844 N.W.2d at 865.

deposit payable to D.G. or to Debra, or alternatively to D.G. and upon his death to Debra.[3]  *Id.*  Additionally, Debra used the power of attorney and acted as attorney-in-fact to convey to herself 640 acres of real estate owned by D.G.  *Id.*  Overboe drafted the quit claim deed used in the transaction.  *Id.*  Both the transfer of $190,000 from D.G.'s financial accounts and the conveyance of D.G.'s real estate were done without consideration and without D.G.'s knowledge or consent.  *Id.* at 860.  The court concluded Overboe's actions violated the rules regarding conflicts of interest and the rules prohibiting dishonesty, fraud, deceit, or misrepresentation.[4]  *Id.* at 861.

Finally, the court concluded there was clear and convincing evidence that Overboe practiced law in North Dakota during the time that his license was suspended.  *Id.* at 863.  Specifically, after his license was suspended in December 2006, Overboe served a garnishment summons, interrogatories, and garnishment disclosure form upon a corporation to garnish the employee's wages, and served upon the employee a notice of garnishment of wages.  *Id.* at 861.  Overboe's secretary prepared all of these documents.  *Id.* at 862.  Upon receiving notice of the garnishment action, the attorney for the corporation was unable to find a judgment to substantiate the issuance of the garnishment

---

[3]     On the record before us, it appears that Overboe's involvement with this transaction was limited to drafting the power of attorney used by Debra in transferring the funds.  It is unclear where the funds transferred by Debra are now or if any further legal action resulted from this transaction.

[4]     The North Dakota Supreme Court rejected the hearing panel's finding that Overboe violated the rule regarding prohibited transactions with clients in the D.G. matter, because Overboe did not enter into a transaction with D.G.  *Overboe II*, 844 N.W.2d at 860-61.

5

summons, and sent Overboe a letter requesting withdrawal and release of the garnishment summons. *Id.* Thereafter, Overboe complied with the request and withdrew the summons. *Id.* The court concluded Overboe's actions violated the rules regarding the unauthorized practice of law, requiring an attorney to properly supervise a non-lawyer assistant, and prohibiting dishonesty, fraud, deceit, or misrepresentation. *Id.* at 863.

In September 2014 the Director filed a petition for disciplinary action with this court seeking reciprocal discipline against Overboe pursuant to Rule 12(d), RLPR, based on his North Dakota disbarment. We ordered the parties to show cause why reciprocal discipline should not be imposed. Overboe did not respond to our order, nor did he appear at oral argument.

## I.

When the Director learns that a lawyer licensed to practice in Minnesota has been publicly disciplined in another jurisdiction, the Director may investigate and, without further proceedings, file a petition for disciplinary action. Rule 12(d), RLPR. Thereafter, the Court may "impose the identical discipline unless it appears that discipline procedures in the other jurisdiction were unfair, or the imposition of the same discipline would be unjust or substantially different from discipline warranted in Minnesota." *Id.* Consequently, we examine whether the discipline procedures in North Dakota were fair, and whether the imposition of disbarment would be unjust or substantially different from the discipline warranted in Minnesota for the same misconduct.

6

A.

The disciplinary proceedings in another jurisdiction are fair if they are "consistent with [the principles of] fundamental fairness and due process." *In re Wolff*, 810 N.W.2d 312, 316 (Minn. 2012) (alteration in original). To determine the fairness of the disciplinary proceedings in North Dakota, we review the underlying record to see if the attorney received notice of the proceedings and the allegations against him, and had the opportunity to respond to those allegations and offer evidence of mitigating circumstances. *In re Schmidt*, 586 N.W.2d 774, 775-76 (Minn. 1998); *In re Koss*, 572 N.W.2d 276, 277 (Minn. 1997). We have consistently held that when the attorney is given notice of the hearing and an opportunity to respond to the allegations, the proceedings are fair. *Wolff*, 810 N.W.2d at 316; *Schmidt*, 586 N.W.2d at 776. But if the attorney is not afforded a hearing with the opportunity to respond to the allegations against him, the proceedings are unfair. *Koss*, 572 N.W.2d at 277-78.

Overboe was given notice of, and an opportunity to respond to, the application for an interim suspension and the four petitions for discipline filed against him in North Dakota. A hearing panel was appointed on the four petitions, and Overboe participated in the proceedings by presenting evidence and making arguments on his own behalf. Overboe also took the opportunity to appeal the findings of the panel to the North Dakota Supreme Court.

There was a substantial delay between the filing of the North Dakota petitions for disciplinary action and the disciplinary hearing in Overboe's case. *See Overboe II*, 844 N.W.2d at 856. The North Dakota Supreme Court acknowledged that a delay of more

7

than 6 years between the first petition for discipline and the hearing was troubling, but that such a delay did not destroy the fundamental fairness of the entire process. *Id.* Our law is consistent with North Dakota law. *See In re N.P.*, 361 N.W.2d 386, 393 (Minn. 1985) (refusing to dismiss a disciplinary investigation based on an unreasonable delay because the attorney failed to show prejudice from the delay); *State v. Lawrence*, 312 N.W.2d 251, 254 (Minn. 1981) (concluding that due process may be violated if a preaccusation delay causes actual and substantial prejudice).

The North Dakota Supreme Court concluded that Overboe failed to prove he was actually and substantially prejudiced by the delay. The record supports that conclusion. At each stage of the proceedings, Overboe was given the opportunity to respond to the allegations of misconduct and present a defense. Therefore, we conclude the North Dakota disciplinary proceedings were fundamentally fair and consistent with due process.

B.

The North Dakota Supreme Court's findings and conclusions of misconduct "establish conclusively" Overboe's "misconduct for purposes of [this] disciplinary proceeding[]."[5] Rule 12(d), RLPR. We must therefore examine whether the imposition

---

[5]  Overboe's misconduct in North Dakota violated Minn. R. Prof. Conduct 1.2(a) ("[A] lawyer shall abide by a client's decisions concerning the objectives of representation . . . . A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation."), 1.7(a) ("[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest."), 1.8(j) ("A lawyer shall not have sexual relations with a client unless a consensual sexual relationship existed between them when the client-lawyer relationship commenced."), 4.1 ("In the course of representing a client a lawyer shall not knowingly make a false statement of fact or law."), 5.3(b) ("[A] lawyer having direct supervisory authority over [a] nonlawyer
(Footnote continued on next page.)

8

of reciprocal discipline would be unjust or substantially different from the discipline warranted in Minnesota for the same misconduct. *Wolff*, 810 N.W.2d at 317. The relevant factors to this determination include: (1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession. *Id.*; *In re Rebeau,* 787 N.W.2d 168, 173 (Minn. 2010). We also consider any aggravating factors and mitigating circumstances that are present. *Rebeau*, 787 N.W.2d at 173-74. The question, however, is not whether we might have imposed different discipline had Overboe's disciplinary proceedings originated in Minnesota, but rather "whether the discipline imposed by [North Dakota] is unjust or substantially different from discipline warranted in Minnesota." *In re Meaden*, 628 N.W.2d 129, 134 (Minn. 2001) ("Although we might have imposed different discipline, either more or less, had [the attorney's] disciplinary proceedings originated in Minnesota, that is not the situation presented.").

Among the troubling aspects of Overboe's misconduct is the D.G. matter. The North Dakota Supreme Court concluded that Overboe assisted his wife in obtaining D.G.'s assets when D.G. neither knew about nor consented to these transfers. *Overboe II*,

---

(Footnote continued from previous page.)
shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer."), 5.5(a) ("A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so."), 8.4(b) ("It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects."), and 8.4(c) ("It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.").

9

844 N.W.2d at 861 (concluding that Overboe engaged in conduct " 'involving dishonesty, fraud, deceit, or misrepresentation' " because D.G. "did not know or consent to the transfer of his financial accounts or his real property to" Overboe's wife (citing N.D.R. Lawyer Discipl. 1.2(a)(3)). The court determined that Overboe knowingly deceived D.G., an elderly and vulnerable client, with the intent to benefit himself or another, to the detriment of D.G. *See id.* at 865 (explaining that disbarment was appropriate under North Dakota's disciplinary standard, which states that "[d]isbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potential serious injury."). We, too, have disbarred attorneys who have financially exploited vulnerable clients. *In re Moe*, 851 N.W.2d 868, 871 (Minn. 2014) (disbarring attorney who, among other things, misappropriated funds from a ward); *In re Peterson*, 456 N.W.2d 89, 93 (Minn. 1990) (disbarring attorney who, among other things, took "advantage of a trusting, vulnerable client to put $100,000" in the attorney's business venture); *see also In re Franke*, 345 N.W.2d 224, 228 (Minn. 1984) (stating that when an attorney "exhibits callous disregard for the . . . financial well-being of vulnerable, dependent persons, that attorney has a heavy burden to persuade the court of his fitness to continue the practice of law.").

In addition, Overboe engaged in extensive sexual misconduct. The North Dakota Supreme Court found that Overboe engaged in unwelcome sexual conduct with four clients by inappropriately touching them or exposing himself to them and that he made inappropriate sexual comments to three clients, including requesting sexual favors in

10

exchange for reduced legal fees. Overboe was criminally convicted for some of this conduct. This misconduct warrants severe discipline. *See In re Albrecht*, 845 N.W.2d 184, 191 (Minn. 2014) (disbarring an attorney with an extensive disciplinary history for, in part, engaging in sexual activity with a client).

Further, Overboe was suspended from the practice of law when he initiated the garnishment action in which he falsely represented that there was a judgment in his favor and failed to make reasonable efforts to ensure his secretary's conduct complied with his professional obligations. Practicing law while suspended "harm[s] the legal profession and do[es] not represent the virtues that the public has the right to expect of lawyers." *In re Grigsby,* 815 N.W.2d 836, 846 (Minn. 2012). "In cases involving repeated instances of serious misconduct, we have disbarred attorneys who have engaged in the practice of law without a valid license." *Schmidt*, 586 N.W.2d at 776.

We consider Overboe's misconduct as a whole. *In re Oberhauser*, 679 N.W.2d 153, 160 (Minn. 2004) ("[T]he cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline."). Overboe's misconduct spanned 14 years and continued despite his suspension. The North Dakota Supreme Court also found that several aggravating factors were present.[6] *Overboe II*, 844 N.W.2d at 865. The

---

[6] The aggravating factors found by the North Dakota Supreme Court also constitute aggravating factors in Minnesota. *See In re Brost*, 850 N.W.2d 699, 705 (Minn. 2014) (selfish or dishonest motive as an aggravating factor); *In re Ulanowski*, 800 N.W.2d 785, 802 (Minn. 2011) (pattern of misconduct and multiple offenses as an aggravating factor); *Rebeau*, 787 N.W.2d at 176 (disciplinary history and lack of remorse as aggravating

(Footnote continued on next page.)

11

cumulative weight and severity of Overboe's misconduct leads us to conclude that disbarment is neither unjust nor substantially different from the discipline warranted in Minnesota. We therefore impose reciprocal discipline and order Overboe disbarred from the practice of law in Minnesota.

Accordingly, we order that:

1. Respondent David A. Overboe is disbarred from the practice of law in Minnesota, effective upon the date of filing of this opinion.

2. Respondent shall pay to the Director the sum of $900 in costs under Rule 24, RLPR, and shall comply with Rule 26, RLPR (requiring notice of disbarment to clients, opposing counsel, and tribunals).

---

(Footnote continued from previous page.)
factors); *Overboe I*, 745 N.W.2d at 867 (substantial experience in practice of law as an aggravating factor); *In re Stroble*, 487 N.W.2d 869, 871 (Minn. 1992) (vulnerability of victim as an aggravating factor).