STATE OF MINNESOTA

IN SUPREME COURT

A14-0804

Original Jurisdiction

Per Curiam

In re Petition for Disciplinary Action against
Paul Roland Rambow, a Minnesota Attorney,
Registration No. 0169389

Filed:  February 10, 2016
Office of Appellate Courts

_____

Patrick R. Burns, Acting Director, Julie E. Bennett, Senior Assistant Director, Office of
Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Paul Roland Rambow, Minnetonka, Minnesota, pro se.

_____

S Y L L A B U S

Disbarment is the appropriate sanction for an attorney who misappropriated client funds; forged, or allowed his staff to forge, endorsements on clients' settlement checks and medical reimbursement checks; failed to maintain required trust account books and records; made false statements to the Director and to an ethics investigator; failed to cooperate during the disciplinary investigation; violated multiple court orders; improperly billed clients; failed to communicate adequately and act diligently on client matters; took unauthorized actions on behalf of former clients after the termination of representation; released confidential client information to third parties; engaged in a conflict of interest; and engaged in the unauthorized practice of law.

1

O P I N I O N

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (the Director) petitioned this court for disciplinary action against respondent Paul Roland Rambow. After finding that Rambow committed multiple acts of misconduct, including misappropriation of client funds, a referee recommended that Rambow be disbarred. The sole issue before us is the appropriate disciplinary sanction to impose. We conclude that the appropriate sanction is disbarment.

I.

On May 16, 2014, the Director filed a petition for disciplinary action against Rambow. After Rambow filed an answer, we appointed a referee, who held an evidentiary hearing on this matter.[1] The referee issued findings of fact, conclusions of law, and a recommendation of disbarment.[2] Because neither party ordered a transcript,

---

[1] The Director filed a supplementary petition on July 25, 2014, and a second supplementary petition on October 24, 2014. By orders dated October 8, 2014 and October 21, 2014, we deemed all paragraphs in the supplementary petition to be admitted because Rambow failed to respond and failed to provide proof of service for an unsigned, uncaptioned document filed with the Clerk of the Appellate Courts. *See* Rule 13(b), Rules on Lawyers Professional Responsibility (RLPR) (providing that "[i]f the respondent fails to file an answer [to a petition for disciplinary action,] . . . the allegations shall be deemed admitted"). In addition, the allegations in the second supplementary petition were deemed admitted by the referee because Rambow failed to respond to the Director's request for admissions.

[2] Because the referee recommended that Rambow be disbarred, we temporarily suspended Rambow on April 14, 2015, pending final resolution of this matter. *See* Rule 16(e), RLPR ("Upon a referee disbarment recommendation, the lawyer's authority to

(Footnote continued on next page.)

the referee's findings of fact and conclusions of law are conclusive. *See* Rule 14(e), RLPR; *In re Hummel*, 839 N.W.2d 78, 81 (Minn. 2013). The referee's findings describe in detail the extensive misconduct committed by Rambow. We summarize the most pertinent findings of misconduct below.

*Misappropriation*

Rambow misappropriated a total of $1,393.08 of client funds in two matters. In the N.O. matter in 2012 and 2013, Rambow misappropriated $871.08 from five reimbursement checks, issued by N.O.'s insurer, which were intended to pay for N.O.'s medical treatment. Rambow received these funds, but he never paid N.O.'s medical providers. In the K.W. matter in 2009, Rambow misappropriated $522 of client funds that were intended to pay a mediator fee. Rambow never paid the mediator.

*Check Forgery*

In two matters, Rambow forged (or allowed his staff to forge) endorsements and signatures on clients' settlement checks and medical reimbursement checks. He then deposited the funds into his trust account.

*Trust Account Violations and Improper Billing*

Rambow negligently misappropriated funds in his trust account involving at least 36 client matters, resulting in shortages (i.e., the trust account balance fell below the sum of client balances) between $313.81 and $12,303.74. Several shortages occurred between

(Footnote continued from previous page.)
practice law shall be suspended pending final determination of the disciplinary proceeding, unless the referee directs otherwise or the Court orders otherwise.").

2006 and 2009, including a continuous period of shortage for more than 14 months, from August 5, 2008 through October 26, 2009. In addition, Rambow failed to maintain client subsidiary ledgers and checkbook registers, perform required reconciliations with bank records, properly identify deposits and checks, and record checks as they were issued. An audit disclosed that Rambow's trust account records did not match bank documents. And multiple checks were either listed incorrectly in the check register, or not listed at all. Between January 1, 2006 and July 29, 2008, Rambow "consistently held funds in his trust account which were not attributed to anyone and not accounted for in [his] records." Rambow distributed funds held on behalf of certain clients without authorization, failed to make authorized distributions promptly on behalf of other clients, and failed to provide requested accountings. Finally, in at least five matters, Rambow overbilled his clients for costs.

*Failures to Cooperate and Misrepresentations*

Rambow failed to cooperate with ethics investigations by the Director and by the Fourth District Ethics Committee (DEC). He failed to respond to several requests to provide information and to produce documents. In addition, Rambow made several misrepresentations during the ethics investigation, including false statements to the DEC investigator regarding his misconduct and false statements to the Director regarding the unauthorized practice of law.

*Violations of Court Orders and Civil Contempt*

During divorce proceedings with his former wife, T.M., Rambow violated court orders and was held in civil contempt. The divorce judgment and decree ordered

4

Rambow to pay T.M. a property settlement of $615,000, in addition to monthly spousal maintenance and child support payments. Rambow violated the judgment and decree and multiple subsequent court orders when he failed to make timely payments, failed to comply with court-ordered drug testing,[3] failed to cooperate with T.M. regarding property settlements, and hindered the sale of property. Rambow was held in civil contempt multiple times between 2007 and 2012 for failure to follow court orders. In February 2015, Rambow was incarcerated as a result of the execution of another civil contempt order in his divorce matter.

In a personal injury matter for client H.R., Rambow violated a court order compelling discovery, which resulted in the dismissal of the case. Specifically, the district court granted a motion to compel and ordered Rambow to produce the requested discovery by a certain date. The district court dismissed the case without prejudice because Rambow failed to produce the discovery by that date and "could not explain his failure to comply."

*Other Misconduct*

In at least nine client matters, Rambow failed to communicate adequately with clients, to act diligently, and to forward client files promptly after the termination of his representation. In three matters, Rambow took unauthorized actions on behalf of former clients after his representation was terminated. These unauthorized actions included

---

[3]    After Rambow tested positive for cocaine in 2007, the district court ordered hair-follicle drug testing on several occasions. But Rambow failed to comply. In December 2010, Rambow was admitted for inpatient treatment to address his chemical abuse.

disbursing clients' funds to third parties and requesting medical records. In two matters, Rambow released confidential client information to third parties. In one matter, Rambow engaged in a conflict of interest by submitting an affidavit to a Medical Review Board that supported an adverse party and disparaged his client. In addition, Rambow engaged in the unauthorized practice of law during a period in which he was suspended for failing to pay his annual lawyer registration fee, and during another period in which he was placed on involuntary restricted status for failing to comply with CLE obligations.

The referee concluded that Rambow violated Minnesota Rules of Professional Conduct (MRPC) 1.15(a)–(b),[4] 1.15(c)(3)–(4),[5] 1.15(h),[6] 1.16(d),[7] 1.3,[8] 1.4(a)–(b),[9]

---

[4] Rule 1.15(a), MRPC, requires a lawyer to deposit "[a]ll funds of clients or third persons held by a lawyer or law firm in connection with a representation" into a trust account, and generally forbids a lawyer from depositing funds "belonging to the lawyer or law firm" into that account. Rule 1.15(b), MRPC, requires a lawyer to, in relevant part, "withdraw earned fees and any other funds belonging to the lawyer or the law firm from the trust account within a reasonable time after the fees have been earned or entitlement to the funds has been established."

[5] Rule 1.15(c)(3), MRPC, in relevant part, requires a lawyer to "maintain complete records of all funds . . . of a client or third person coming into the possession of the lawyer and render appropriate accounts to the client or third person regarding them." Rule 1.15(c)(4), MRPC, in relevant part, requires a lawyer to "promptly pay or deliver to the client or third person as requested the funds . . . in the possession of the lawyer which the client or third person is entitled to receive."

[6] Rule 1.15(h), MRPC, requires a lawyer to "maintain or cause to be maintained on a current basis, books and records sufficient to demonstrate income derived from, and expenses related to, the lawyer's private practice of law."

[7] Rule 1.16(d), MRPC, requires a lawyer, upon termination of representation, to "surrender[] papers and property to which the client is entitled, and refund[] any advance payment of fees or expenses that has not been earned or incurred."

(Footnote continued on next page.)

1.5(a),[10] 1.6(a),[11] 1.7(a)(2),[12] 3.2,[13] 3.3(a)(1),[14] 3.4(c),[15] 4.1,[16] 5.3(a)–(c),[17] 5.5(a),[18] 8.1(a)–(b),[19] 8.4(c)–(d),[20] and Rule 25, RLPR.[21]

---

(Footnote continued from previous page.)

[8]     Rule 1.3, MRPC, requires a lawyer to "act with reasonable diligence and promptness in representing a client."

[9]     Rule 1.4(a)–(b), MRPC, requires a lawyer, in relevant part, to "promptly inform the client of any decision or circumstance with respect to which the client's informed consent . . . is required," "keep the client reasonably informed about the status of the matter," "promptly comply with reasonable requests for information," and "explain a matter to the extent reasonably necessary to permit the client to make informed decisions."

[10]     Rule 1.5(a), MRPC, forbids a lawyer from "mak[ing] an agreement for, charg[ing], or collect[ing] an unreasonable fee or an unreasonable amount for expenses."

[11]     Rule 1.6(a), MRPC, forbids a lawyer from "knowingly reveal[ing] information relating to the representation of a client."

[12]     Rule 1.7(a), MRPC, forbids a lawyer from "represent[ing] a client if the representation involves a concurrent conflict of interest."

[13]     Rule 3.2, MRPC, requires a lawyer to "make reasonable efforts to expedite litigation consistent with the interests of the client."

[14]     Rule 3.3(a)(1), MRPC, forbids a lawyer from knowingly "mak[ing] a false statement of fact or law to a tribunal."

[15]     Rule 3.4(c), MRPC, forbids a lawyer from "knowingly disobey[ing] an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."

[16]     Rule 4.1, MRPC, provides that, "[i]n the course of representing a client, a lawyer shall not knowingly make a false statement of fact or law."

[17]     Rule 5.3(a)–(b), MRPC, provides that lawyers in a managerial or supervisory role over nonlawyers must make reasonable efforts to ensure (and to enact measures giving reasonable assurance) that the conduct of nonlawyers "is compatible with the

(Footnote continued on next page.)

The referee found several aggravating factors, including Rambow's lack of remorse or recognition of wrongful conduct and his significant legal experience of nearly 30 years in the practice of law. The referee found that no mitigating factors were present.

II.

Because the referee's findings of fact and conclusions of law are conclusive, *see* Rule 14(e), RLPR, the sole issue before us is the appropriate discipline to impose. Consistent with the referee's recommendation, the Director argues that Rambow should be disbarred. Rambow did not file a brief in this proceeding, although he appeared at the oral argument.

Although we afford "great weight" to the referee's recommendation, we have the ultimate responsibility for determining the appropriate disciplinary sanction. *In re*

---

(Footnote continued from previous page.)
professional obligations of the lawyer." Rule 5.3(c) provides that "a lawyer shall be responsible for the conduct of a nonlawyer that would be a violation of the Rules of Professional Conduct" if that lawyer ordered or ratified the conduct, or, if a managing or supervising lawyer knew of the conduct and failed to take reasonable remedial action.

[18] Rule 5.5(a), MRPC, prohibits the unauthorized practice of law.

[19] Rule 8.1(a), MRPC, forbids a lawyer from "knowingly mak[ing] a false statement of material fact" in connection with a disciplinary matter. Rule 8.1(b), MRPC, forbids a lawyer from "knowingly fail[ing] to respond to a lawful demand for information" in connection with a disciplinary matter.

[20] Rule 8.4(c), MRPC, forbids a lawyer from "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation." Rule 8.4(d), MRPC, forbids a lawyer from "engag[ing] in conduct that is prejudicial to the administration of justice."

[21] Rule 25, RLPR, requires a lawyer to cooperate and comply with reasonable requests related to a disciplinary investigation or proceeding.

*Harrigan*, 841 N.W.2d 624, 628 (Minn. 2014). The purpose of disciplinary sanctions is "not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct." *Id.* (quoting *In re Rebeau*, 787 N.W.2d 168, 173 (Minn. 2010)). When determining the appropriate discipline, we are guided by four factors: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." *Id.* at 628-29 (quoting *In re Fru*, 829 N.W.2d 379, 388 (Minn. 2013)). We also consider any aggravating or mitigating factors. *Id.* at 629. Although we consider similar cases for guidance, the discipline we impose is "tailored to the specific facts of each case." *Id.*

Here, based on the intentional misappropriation of client funds alone, our precedent supports the sanction of disbarment. Misappropriation occurs when client funds "are not kept in trust and are used for a purpose other than one specified by the client." *Harrigan*, 841 N.W.2d at 629 (quoting *In re Brooks*, 696 N.W.2d 84, 88 (Minn. 2005)). The presumptive discipline for intentional misappropriation of client funds is disbarment, unless there is clear and convincing evidence of substantial mitigating factors. *Id.* at 629; *In re Hummel*, 839 N.W.2d 78, 81 (Minn. 2013); *In re Jones*, 834 N.W.2d 671, 681 (Minn. 2013). The referee found that no mitigating factors were present.

We have ordered disbarment even when the amount of misappropriation was relatively small. For example, we disbarred an attorney for misappropriating $1,000, forging a client's endorsement on a settlement check, failing to cooperate with the Director, and neglecting client matters. *In re Swokowski*, 796 N.W.2d 317, 319-26

9

(Minn. 2011). We also have disbarred an attorney for misappropriating $2,000, neglecting client matters, mismanaging his trust account, failing to appear at hearings, violating a court order, and failing to cooperate during the disciplinary investigation. *In re De Rycke*, 707 N.W.2d 370, 374-76 (Minn. 2006). And we have disbarred an attorney for misappropriating $4,000, charging clients for services that were not performed, forging a client's name on a settlement check, and making misrepresentations to the Director and the DEC. *In re Randall*, 562 N.W.2d 679, 683 (Minn. 1997).

Repeated violations of court orders may be an independent ground for disbarment. *In re Moe*, 851 N.W.2d 868, 872 (Minn. 2014) ("Moe failed to respond promptly to discovery requests and comply with court orders. Such repeated failure to comply with court orders is itself a ground for disbarment."). Noncooperation with the disciplinary process, when it exists in connection with other misconduct, "increases the severity of the disciplinary sanction." *In re Nelson*, 733 N.W.2d 458, 464 (Minn. 2007). Moreover, based on the variety and multitude of Rambow's misconduct, viewed as a whole, the cumulative weight of Rambow's misconduct supports a severe sanction. *See In re Oberhauser*, 679 N.W.2d 153, 160 (Minn. 2004) ("[T]he cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline.").

Next, we consider the harm to the public and the legal profession, including "the number of clients harmed [and] the extent of the clients' injuries." *In re Coleman*, 793 N.W.2d 296, 308 (Minn. 2011) (quoting *Randall*, 562 N.W.2d at 683). Rambow's extensive misconduct resulted in significant harm to clients, the public, and the legal

10

profession. At least 23 client matters were involved in this disciplinary action, and each of these clients was harmed by Rambow's misconduct. For example, in the H.R. matter, which involved a child's injury from a dog bite, Rambow violated the court's order to produce discovery responses and "could not explain his failure to comply." The district court dismissed the case "due to [Rambow's] failure to prosecute the matter." Similarly, Rambow's misconduct in the W.S. matter, which included failing to appear for depositions and making a misrepresentation to an arbitrator, contributed to a dismissal. In another personal injury matter, Rambow referred his client, M.P., to a doctor, J.B. After M.P. became "dismayed" with J.B. and filed a complaint, Rambow submitted to a Medical Review Board an affidavit in support of the doctor that disparaged his client, M.P.

In addition, several of Rambow's personal injury clients faced significant unpaid medical bills. For example, after Rambow received medical reimbursement checks totaling $4,117.24 from L.S.'s insurer, Rambow (or someone at his direction) endorsed and deposited the funds into Rambow's trust account without L.S.'s knowledge or authority. Although Rambow's staff claimed that the checks were used to pay L.S.'s medical bill, no such payment was made. Because the insurance proceeds were not used to pay the medical bill, L.S. became personally responsible for paying the expense. Similarly, in the N.O. matter, Rambow or his staff forged the endorsements on medical reimbursement checks from N.O.'s insurer. Rambow then misappropriated the funds from the checks, which were intended to pay for N.O.'s medical treatment.

11

Also, two aggravating factors are present: Rambow's lack of any remorse or recognition of his wrongful conduct and his significant legal experience comprising nearly 30 years of practice.[22] *See Harrigan*, 841 N.W.2d at 630 (stating that "substantial experience as a lawyer" and "fail[ure] to recognize the wrongful nature of [the] misconduct" are aggravating factors); *In re Rebeau*, 787 N.W.2d 168, 176 (Minn. 2010) ("[L]ack of remorse also constitutes an aggravating circumstance."). Rambow did not allege and prove any mitigating factors. *See Hummel*, 839 N.W.2d at 82 ("The attorney against whom discipline is sought bears the burden to allege and prove mitigating circumstances.").

In light of the nature and cumulative weight of Rambow's misconduct; the significant harm he caused to his clients, the public, and the legal profession; the

---

[22] The referee also found Rambow's commission of "multiple" and "repeated" acts of misconduct to be an aggravating factor. Although we recognized this aggravating factor in the past, *In re Ulanowski*, 800 N.W.2d 785, 802 (Minn. 2011) ("Committing multiple acts of misconduct over a long period of time is an aggravating factor."); *In re Isaacs*, 451 N.W.2d 209, 212 (Minn. 1990) (concluding that "repeated and numerous professional violations" was an aggravating factor), we recently clarified that generally we account for the commission of multiple acts of misconduct when considering the cumulative weight of disciplinary violations. *In re Fru*, 829 N.W.2d 379, 390 n.7 (Minn. 2013). Accordingly, we no longer recognize multiple acts (or a "pattern" or "repetition") of misconduct as an aggravating factor because that would "overlap with our consideration of the cumulative weight" of the misconduct. *Id.* For this reason, we also do not rely on several other aggravating factors listed by the referee, such as Rambow's "fail[ure] to correct the problems with his trust account books and records," his "misrepresentations during the disciplinary investigations," and the "significant harm" he caused. *See In re O'Brien*, 809 N.W.2d 463, 466 n.9 (Minn. 2012) ("We caution referees not to rely on the same acts . . . to support both a finding of attorney misconduct and the existence of an aggravating factor.").

aggravating factors addressed above; and the absence of any mitigating factors, the appropriate sanction is disbarment.

Accordingly, we order that:

1. Respondent Paul Roland Rambow is disbarred from the practice of law in the State of Minnesota, effective upon the date of filing of this opinion.

2. Rambow shall comply with Rule 26, RLPR (requiring notice of disbarment to clients, opposing counsel, and tribunals).

3. Rambow shall pay $900 in costs pursuant to Rule 24, RLPR.