STATE OF MINNESOTA

IN SUPREME COURT

A15-1186

Original Jurisdiction

In re Petition for Reinstatement of Clark Calvin
Griffith, II, a Minnesota Attorney, Registration
No. 0175638.

Per Curiam
Took no part, Gildea, C.J.

Filed: August 17, 2016
Office of Appellate Courts

_____

Clark Calvin Griffith, II, Minneapolis, Minnesota, pro se.

Susan M. Humiston, Director, Julie E. Bennett, Senior Assistant Director, Office of
Lawyers Professional Responsibility, Saint Paul, Minnesota, for respondent.

_____

S Y L L A B U S

The determination by a panel of the Lawyers Professional Responsibility Board that

an indefinitely suspended lawyer is not entitled to reinstatement because he failed to prove

by clear and convincing evidence that he has undergone the requisite moral change for

reinstatement was not clearly erroneous.

Petition denied.

O P I N I O N

PER CURIAM.

By order dated November 5, 2013, we suspended petitioner Clark Calvin

Griffith, II, indefinitely with no right to petition for reinstatement for 90 days. Griffith

filed a petition for reinstatement on July 23, 2015. After a hearing, a panel of the Lawyers

Professional Responsibility Board (the panel) concluded that Griffith did not prove by clear and convincing evidence that he has undergone a moral change, and therefore recommended denial of Griffith's petition for reinstatement. Griffith contests the panel's findings and recommendation, arguing that he should be reinstated. The Director of the Office of Lawyers Professional Responsibility (the Director) agrees with the panel's recommendation. After independently reviewing the record, we conclude that the panel's determination was not clearly erroneous. Therefore, we deny Griffith's petition for reinstatement.

I.

Griffith was admitted to practice law in Minnesota in 1986. In 2013 we suspended Griffith indefinitely with no right to petition for reinstatement for a minimum of 90 days due to his: (1) sexual harassment of a law student that he was supervising at William Mitchell College of Law (WMCL); and (2) attempts to pressure the law student into recanting her complaints against him. *In re Griffith*, 838 N.W.2d 792, 793 (Minn. 2013).

On January 24, 2012, Griffith, an adjunct professor, and the law student met at a restaurant in Saint Paul as part of an independent study clinic. As Griffith has stipulated, during the meeting, he "engaged in verbal and physical conduct and communications of a sexual nature that were not welcomed by [the student] and heightened her feelings of discomfort with [Griffith]." The meeting ended and Griffith walked the student to her car. As Griffith has further stipulated, he then "unzipped his pants, exposed his penis to [the student], and then took [the student's] hand and forced her to touch his penis."

The next day the student reported the incident to WMCL. WMCL directed Griffith

to have no contact with the student, but he continued to call, text, and send messages. These communications included multiple attempts by Griffith to convince the student to recant the complaints she made to authorities. WMCL was notified of the communications and sent Griffith a second notice to have no contact with the student. Griffith again disregarded the instruction and contacted the student to ask why she had filed a criminal complaint against him. The student told Griffith to stop contacting her. WMCL conducted an investigation into the incident and terminated Griffith's employment. On June 12, 2012, Griffith entered an *Alford* plea and was found guilty of indecent exposure.

On July 23, 2015, Griffith filed his petition for reinstatement. The Director opposed reinstatement. After a hearing, the panel recommended denial of Griffith's petition. The panel concluded that Griffith "ha[d] not proven by clear and convincing evidence that he has undergone the requisite moral change to render him fit to resume the practice of law."

## II.

" '[A]n attorney applying for reinstatement must establish by clear and convincing evidence that . . . he has undergone such a moral change as now to render him a fit person to enjoy the public confidence and trust once forfeited.' " *In re Jellinger*, 728 N.W.2d 917, 922 (Minn. 2007) (quoting *In re Porter*, 472 N.W.2d 654, 655 (Minn. 1991)). Clear and convincing evidence is "unequivocal, intrinsically probable and credible, and free from frailties." *Gassler v. State*, 787 N.W.2d 575, 583 (Minn. 2010).

Our scope of review in matters such as this is well established. When, as here, a petitioner orders a transcript of a reinstatement hearing, "the panel's findings 'are not binding on this court.' " *In re Mose*, 754 N.W.2d 357, 360 (Minn. 2008) (quoting

3

*In re Selmer*, 749 N.W.2d 30, 35 (Minn. 2008)); *see also* Rule 14(e), Rules on Lawyers Professional Responsibility. After independently reviewing the record, we "will uphold the panel's factual findings if they have evidentiary support in the record and are not clearly erroneous." *Mose*, 754 N.W.2d at 360. "As a general rule we will defer to a panel's finding that a petitioner's testimony that he has undergone the requisite moral change is not credible . . . ." *Id.* at 362.

"Evidence of this moral change 'must come not only from an observed record of appropriate conduct, but from the petitioner's own state of mind and his values.' " *Porter*, 472 N.W.2d at 655 (quoting *In re Hanson*, 454 N.W.2d 924, 925 (Minn. 1990)). "This standard requires stronger proof of good character and trustworthiness than is required in an original application for admission to practice." *Id.* at 655-56. "Generally, to prove moral change a lawyer must show remorse and acceptance of responsibility for the misconduct, a change in the lawyer's conduct and state of mind that corrects the underlying misconduct that led to the suspension, and a renewed commitment to the ethical practice of law." *In re Mose*, 843 N.W.2d 570, 575 (Minn. 2014).

> In addition to moral change, on a petition for reinstatement we also consider:
>
> (1) compliance with the terms of the suspension order; (2) the attorney's recognition of the wrongfulness of his or her misconduct; (3) the length of time since suspension; (4) the seriousness of the original misconduct; (5) the attorney's physical or mental illness or pressures that may be susceptible to correction; and (6) the attorney's intellectual competence to practice law.

*Id.* at 574. Moral change and recognition of wrongfulness are overlapping factors. "While moral change and recognition of wrongfulness are considered to be only two factors in the

overall analysis, we have previously recognized the 'decisive' nature of these factors." *In re Holker*, 765 N.W.2d 633, 639 n.2 (Minn. 2009) (citation omitted).

### III.

The panel addressed each factor. It determined that: (1) Griffith had complied with the terms of the suspension order; (2) he had not demonstrated insight into the wrongfulness of his conduct and accepted personal responsibility for his actions; (3) he had been suspended for 2 years; (4) he was convicted of misdemeanor indecent exposure; (5) no evidence or testimony was received that would indicate a physical or mental illness or pressure; and (6) evidence suggested that he was competent to practice law. Finally, the panel concluded that Griffith had not demonstrated moral change.

In support of its determinations on moral change and recognition of wrongfulness, the panel made multiple findings:

1.      Griffith agreed to an *Alford* plea, which did not require him to acknowledge guilt. The transcript shows that the panel had difficulty getting Griffith to acknowledge the conviction and the finding of guilt.

2.      Griffith attempted what the panel called "moral shifting of blame" by suggesting that his misconduct had been caused by the side effects of a "medical cocktail."

3.      Griffith "did not articulate the difference between his past and present attitudes."

4.      Griffith testified, contrary to his stipulation in the disciplinary proceeding, that both he and the student engaged in verbal and physical conduct of a sexual nature.

5

5.      Griffith implied that the student was pursuing him. He did not acknowledge the student's experience or express an understanding of or appreciation for the suffering that his actions inflicted on his victim.

Based on these findings, the panel concluded that Griffith "has not proven by clear and convincing evidence that he has undergone the requisite moral change to render him fit to resume the practice of law."

Based on our independent review of the record, we hold that the panel's findings and conclusions are not clearly erroneous, and are well supported by the record. In particular, we note, as did the panel, that in the underlying disciplinary proceeding, Griffith stipulated that he took the student's hand and forced her to touch his penis. But, before the panel, Griffith said, "I don't know whether I exposed myself or not." Similarly, although Griffith had stipulated previously that his advances were not welcomed by the student, he told the panel that he "thought that meant that we both engaged in" inappropriate sexual conduct. At oral argument, he told our court that the sexual contact, although it was his "fault, in that I allowed it to happen," "was consensual to the extent that two people participated." Like the panel, we are concerned that Griffith has tried to equivocate on the facts to which he voluntarily stipulated in the disciplinary proceeding.

Most of Griffith's arguments to us take issue with the specific details of, and inferences from, his testimony before the panel. Griffith's arguments are not sufficient to persuade us that he carried his burden by clear and convincing evidence. The panel did not find Griffith credible on key points in his testimony. We defer to the panel's credibility determinations. *Mose*, 754 N.W.2d at 362. *See In re Anderson*, 759 N.W.2d 892, 896

6

(Minn. 2009) ("The referee's findings that are based on a respondent's 'demeanor, credibility, or sincerity' will be reversed only if 'upon review of the entire evidence, [we are] left with the definite and firm conviction that a mistake has been made.' " (quoting *In re Moulton*, 721 N.W.2d 900, 905 (Minn. 2006))).

Griffith makes three specific arguments, none of which has merit. First, Griffith contends that the panel erred in failing to fully consider evidence that his misconduct was the result of an adverse reaction to prescribed medication. Although the panel allowed Griffith to testify on the subject, and he stated that a medical condition "caused the problem," the panel denied his request to submit testimony by, or a report from, a neurologist. The panel did not err because Griffith's disclosure of medical evidence was untimely.

The parties' witness and exhibit lists were due to the panel on October 22, 2015. Griffith requested, and was granted, a 1-week extension. Griffith indicated he had an appointment scheduled with a neurologist on October 26, 2015. However, Griffith did not disclose either the neurologist's report or the possibility of calling the neurologist as a witness when he submitted his exhibit and witness lists on October 29, 2015. On November 6, 2015, Griffith sent the Director a notice of request to call the neurologist, but did not include the report or a signed medical waiver. On November 13, 2015, Griffith sent an e-mail to the panel chair requesting permission to present the neurologist's report at the hearing without testimony. The Director received a signed medical release from Griffith on November 16, 2015. The panel hearing was 2 days later.

Griffith's request was denied during the hearing. The panel reasoned that admitting

the report would unfairly prejudice the Director because the Director would not have time to "adequately prepare for a report that would be received less than 48 hours before the scheduled reinstatement hearing." Under the circumstances, the panel's decision not to allow the neurologist's report due to its untimeliness and not to give weight to Griffith's alleged medical condition was not an abuse of discretion.

Second, Griffith argues that the panel did not give proper weight to his witnesses' testimony. Griffith called five witnesses, four of whom have known him for decades. But most of the witnesses who knew Griffith at the time of the sexual misconduct lacked personal knowledge about it. One witness explicitly directed Griffith not to discuss the misconduct with him. The only witness who previously knew Griffith and discussed the sexual misconduct with him appeared confused during the panel hearing, because the facts to which Griffith had stipulated were inconsistent with Griffith's later account. Further, none of Griffith's witnesses provided specific examples of how he had demonstrated a moral change. For these reasons, we conclude that the panel did not clearly err when it gave little or no weight to the testimony of Griffith's witnesses.

Finally, Griffith contends that he was not able to fully express himself regarding his understanding and appreciation of the harm the student experienced because she has sued him. He suggests that, because her civil attorneys were present at the panel hearing, he was inhibited from delivering candid testimony. If so, it was a problem of his own making. Griffith chose to petition for reinstatement while the student's civil lawsuit against him was pending. He knew, or should have known, that the panel hearing was public.

In summary, we are not left with a definite and firm conviction that the panel erred.

8

Griffith is not entitled to reinstatement at this time because he failed to prove by clear and convincing evidence that he has recognized the wrongfulness of his conduct and has undergone the requisite moral change.

Petition denied.

GILDEA, C.J., took no part in the consideration or decision of this case.