**IN RE Petition for DISCIPLINARY AC-TION AGAINST Todd Curtis PEAR-SON, a Minnesota Attorney, Registration No. 0230935**

**A15-1818**

Supreme Court of Minnesota.

Filed: December 21, 2016

Susan M. Humiston, Director, Cassie Hanson, Senior Assistant Director, Office of Lawyers Professional Responsibility, for petitioner.

Todd Curtis Pearson, Wayzata, Minnesota, pro se.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against Todd Curtis Pearson, alleging professional misconduct for a trust-account violation and failure to cooperate with the Director's investigation. The referee determined that Pearson violated several rules of professional conduct and recommended that we impose a public reprimand and 1 year of unsupervised probation for Pearson's misconduct. We adopt the referee's recommendation.

### I.

Todd Curtis Pearson has been licensed to practice law in Minnesota since October 23, 1992. In November 2014, Pearson began work as a full-time contract attorney doing document review for Special Coun-

sel, a legal-staffing firm. After his transition to contract work, Pearson no longer provided legal services directly to members of the public. The balance in Pearson's client trust account with Wells Fargo Bank at the end of 2014 was $6.02, an amount not owed to any client.

In February 2015, a former client satisfied an outstanding invoice by wiring $5,744.00 into Pearson's trust account. That same day, Pearson wired the $5,744.00 out of his trust account into his personal account, for which Wells Fargo Bank assessed a $15 wire-transfer charge. As a result of the wire-transfer charge, Pearson overdrew his trust account. Wells Fargo Bank notified both Pearson and the Director of the overdraft. Pearson immediately deposited $50 in his trust account to restore a positive balance. The notification, however, caused the Director to initiate an inquiry into Pearson's trust-account overdraft. The Director sent a letter to Pearson's office address in Minnetonka, requesting an explanation for the overdraft and copies of Pearson's trust-account books and records.

Pearson received the Director's letter and responded with a detailed description of the transactions and 3 months of trust-account bank statements. Pearson's response, however, did not include the books and records that the Director had requested. The Director sent a second letter to Pearson, which once again requested copies of Pearson's trust-account books and records. This time, Pearson's response stated that he did "not have any additional books and records."

The Director sent a letter to Pearson explaining that Minn. R. Prof. Conduct 1.15(h) requires maintenance of trust-account books and records, even if account activity is minimal. The Director included a sample client-ledger form and insisted that Pearson "reconstruct [the records] at

this time." The Director received no response. The Director mailed a total of four additional letters and a notice of formal investigation to Pearson's Minnetonka office. Pearson claims that he had not been reading the mail forwarded from his Minnetonka office to his home address in Wayzata and had assumed it was "junk" mail.

In November 2015, the Director filed with this court a petition for disciplinary action, alleging failure to cooperate with the Director's investigation, *see* Minn. R. Prof. Conduct 8.1(b); Rule 25, Rules on Lawyers Professional Responsibility (RLPR), and failure to maintain trust-account books and records, *see* Minn. R. Prof. Conduct 1.15(h). Pearson received personal service of the petition, which he claims was his first notice of any correspondence from the Director since the initial two letters. Pearson filed an answer to the petition and finally produced the requested trust-account books and records for the Director.

We appointed a referee to make and report findings of fact, conclusions of law, and a recommendation for discipline. The referee conducted a hearing and concluded that Pearson's conduct violated Minn. R. Prof. Conduct 1.15(h), Minn. R. Prof. Conduct 8.1(b), and Rule 25, RLPR. The referee recommended that we impose a public reprimand and 1 year of unsupervised probation for Pearson's misconduct. The Director urges us to double the period of probation recommended by the referee, whereas Pearson contends that his actions do not warrant any discipline.

## II.

▆ Rule 14(e), RLPR, provides that "[u]nless the respondent or Director, within ten days, orders a transcript and so notifies this Court, the findings of fact and conclusions shall be conclusive." Because neither party ordered a transcript of the hearing, we accept as conclusive both the referee's factual findings and the referee's conclusion that Pearson's conduct violated Minn. R. Prof. Conduct 1.15(h), 8.1(b), and Rule 25, RLPR. *See* Rule 14(e), RLPR; *In re Montez*, 812 N.W.2d 58, 66 (Minn. 2012). The only issue before us, therefore, is the appropriate discipline for Pearson's misconduct. *See In re Rambow*, 874 N.W.2d 773, 778 (Minn. 2016).

▆ The purpose of attorney discipline is to protect the public, protect the judicial system, and deter future misconduct, not to punish the attorney. *In re Rebeau*, 787 N.W.2d 168, 173 (Minn. 2010). Although we place great weight on the recommendation of the referee, we retain the ultimate responsibility for determining the appropriate discipline. *Rambow*, 874 N.W.2d at 778. Four factors guide us in determining the appropriate discipline: (1) the nature of the misconduct; (2) the cumulative weight of the rule violations; (3) the harm to the public; and (4) the harm to the legal profession. *In re Nelson*, 733 N.W.2d 458, 463 (Minn. 2007). We also consider any mitigating or aggravating factors related to the misconduct. *In re Lundeen*, 811 N.W.2d 602, 608 (Minn. 2012). Finally, we look to cases involving similar misconduct in an effort to impose consistent discipline across cases. *Id.*

We have considered the types of misconduct committed by Pearson to be serious. As we have stated, the "maintenance of proper trust account records is vital to the practice of the legal profession," because "it serves to protect the client and avoid even the appearance of professional impropriety." *In re Schulte*, 869 N.W.2d 674, 677 (Minn. 2015) (quoting *In re Beal*, 374 N.W.2d 715, 716 (Minn. 1985)) (internal quotation marks omitted); *see In re Hoedeman*, 620 N.W.2d 714, 718 (Minn. 2001) ("We take trust account violations serious-

ly." (quoting *In re Haugen*, 543 N.W.2d 372, 375 (Minn. 1996))). We have also "long recognized that it is incumbent upon an attorney to cooperate with disciplinary authorities in their investigation and resolution of complaints," and that failure to do so is "serious misconduct." *Schulte*, 869 N.W.2d at 678 (quoting *In re Cartwright*, 282 N.W.2d 548, 551 (Minn. 1979)) (internal quotation marks omitted).

We have suggested, however, that subsequent cooperation can alleviate the seriousness of initial noncooperation by an attorney. *Hoedeman*, 620 N.W.2d at 718. Here, the referee concluded that the nature of Pearson's misconduct "was isolated and comparatively minor." Although we do not discount the serious nature of trust-account violations, including the proper maintenance of books and records, we acknowledge that Pearson did not misappropriate, commingle, or jeopardize client funds. In fact, the trust-account misconduct for which he is being disciplined occurred when he had no client funds in his trust account. Moreover, Pearson belatedly cooperated with disciplinary authorities. Therefore, we agree that the nature of Pearson's misconduct was "comparatively minor" when viewed against other cases involving noncooperation and trust-account violations.

■■ Next we consider "the cumulative weight and severity of multiple disciplinary rule violations," which "may compel severe discipline even when a single act standing alone would not have warranted such discipline." *In re Oberhauser*, 679 N.W.2d 153, 160 (Minn. 2004). We distinguish between "a brief lapse in judgment or a single, isolated incident" and multiple instances of misconduct "occurring over a substantial amount of time." *In re Fairbairn*, 802 N.W.2d 734, 743 (Minn. 2011). The referee found that Pearson's "failure to maintain records and the failure of co-operation did to a certain limited extent add some cumulative weight." We agree. Although the overdraft itself was a single and isolated event, the referee found that Pearson did not maintain books and records for at least a 3-month period and failed to respond to the Director's inquiries and requests over a 6-month period. Further, Pearson repeatedly declined the Director's requests to "reconstruct" the records. Therefore, Pearson's conduct was neither isolated nor brief, but rather persisted over a period of months.

■ The last two factors are harm to the public and the legal profession. In evaluating harm to the public, we consider "the number of clients harmed [and] the extent of the clients' injuries." *In re Coleman*, 793 N.W.2d 296, 308 (Minn. 2011) (quoting *In re Randall*, 562 N.W.2d 679, 683 (Minn. 1997)) (internal quotation marks omitted). Here, as the referee found, Pearson's misconduct caused "no harm ... to the public" and "[n]o client funds were at risk nor was any client inconvenienced." The referee determined, however, that "the legal profession, acting through the Director, did incur harm by virtue of the ... unnecessary additional time and cost incurred by [Pearson's] refusal to respond to the Director's letters" and cooperate with the Director's requests. We agree that Pearson's misconduct harmed the legal profession, even though there was no harm to the public.

■ We also ordinarily consider relevant aggravating and mitigating factors. *See Lundeen*, 811 N.W.2d at 608. In this case, however, the referee did not find any aggravating or mitigating factors. Because neither Pearson nor the Director ordered a transcript, we decline to consider additional aggravating or mitigating factors in making our decision. *See Montez*, 812 N.W.2d at 67.

Finally, in determining the appropriate discipline, we refer to similar cases for guidance. *In re Kurzman*, 871 N.W.2d 753, 759 (Minn. 2015). The referee relied on *In re Anderson*, in which we approved a stipulated 2-year period of supervised probation for misconduct arising out of trust-account violations and noncooperation with a disciplinary investigation. 491 N.W.2d 656, 657 (Minn. 1992). The referee, however, acknowledged that Pearson's case differs in important respects from *Anderson*. First, *Anderson* involved varied trust-account violations, some of which led to shortages that jeopardized client funds. *Id.* Second, the noncooperation charge in *Anderson* was withdrawn before the parties entered into the stipulation, so the attorney's noncooperation did not factor into our disciplinary decision. *Id.* In light of these differences, the referee determined that 1 year of unsupervised probation was appropriate in Pearson's case.

The Director contends that we should double the recommended period of unsupervised probation to 2 years. For support, the Director relies on *In re Miera*, in which this court, without lengthy discussion, approved a stipulation consisting of a public reprimand and a 2-year period of unsupervised probation for "trust account books and records deficiencies and noncooperation." 575 N.W.2d 834, 834 (Minn. 1998). *Miera*, however, does not explain the type of "deficiencies" or the extent of the attorney's "noncooperation." *Id.* The Director also cites *In re Jellinger*, in which we imposed a 2-year period of supervised probation for noncooperation, misuse of a trust account, and neglect of a client matter. 625 N.W.2d 143, 145, 148 (Minn. 2001). *Jellinger*, however, involved more numerous and severe trust-account violations than are present here. Therefore, the Director has not persuaded us that we should deviate from the referee's recommendation of 1 year of unsupervised probation. On the other hand, Pearson cites no case law to support his position that his misconduct warrants no discipline. In sum, our review of case law supports the referee's recommended discipline.

Accordingly, we order that:

1. Respondent Todd Curtis Pearson is publicly reprimanded.

2. Respondent shall pay $900 in costs and $160 in disbursements pursuant to Rule 24, RLPR.

3. Respondent shall be subject to unsupervised probation for 1 year. During the period of probation, respondent shall be subject to the following conditions:

(a) Respondent shall cooperate fully with the Director's Office in its efforts to monitor compliance with this probation. Respondent shall promptly respond to the Director's correspondence by its due date. Respondent shall provide the Director with a current mailing address and shall immediately notify the Director of any change of address. Respondent shall cooperate with the Director's investigation of any allegations of unprofessional conduct that may come to the Director's attention. Upon the Director's request, respondent shall provide authorization for release of information and documentation to verify respondent's compliance with the terms of this probation.

(b) Respondent shall abide by the Minnesota Rules of Professional Conduct.

(c) Respondent shall maintain trust-account books and records in compliance with Minn. R. Prof. Conduct 1.15 and Appendix 1 thereto. These books and records include the following: client-subsidiary ledger, checkbook register, monthly trial balances, monthly trust-account reconciliation, bank statements, canceled checks, duplicate deposit slips,

bank reports of interest, service charges, and interest payments to the Minnesota IOLTA Program. Such books and records shall be made available to the Director within 30 days from the date of this court's order and thereafter shall be made available to the Director at such intervals as she deems necessary to determine compliance.