**IN RE Petition for DISCIPLINARY ACTION AGAINST Alan Richard STEWART, a Minnesota Attorney, Registration No. 0313579.**

A16-1309

Supreme Court of Minnesota.

Filed: July 26, 2017

Susan M. Humiston, Director, Kevin T. Slator, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Alan R. Stewart, Appleton, Wisconsin, pro se.

## OPINION

PER CURIAM.

This case presents the question of whether we should impose reciprocal discipline on respondent Alan Richard Stewart. The U.S. Patent and Trademark Office (USPTO) imposed on Stewart what its regulations call "exclusion from practice" for misappropriating $8,000 in unearned fees, neglecting a client matter, failing to communicate with a client, engaging in the unauthorized practice of law, and failing to cooperate with the disciplinary proceedings. The Director of the Office of Lawyers Professional Responsibility (Director) petitioned to impose reciprocal discipline in Minnesota, arguing that the identical Minnesota discipline is disbarment.

We hold that, in a reciprocal discipline case, the identical discipline to "exclusion from practice" before the USPTO is an indefinite suspension from the practice of law with no right to petition for reinstatement for a minimum of 5 years. We further hold that the USPTO's discipline procedures were fundamentally fair and that a 5-year suspension would not be unjust or substantially different from the discipline warranted in Minnesota. We therefore indefinitely suspend Stewart with no right to petition for reinstatement for a minimum of 5 years.

## FACTS

The facts of this case are not in dispute.[1] Stewart was admitted to practice law in

---

1.  Our recitation of the facts is taken from the Director's petition and accompanying exhibit,

Minnesota in 2001 and registered as a patent attorney by the USPTO that same year. Stewart has also been a member of the Wisconsin and Kentucky bars, and most recently practiced in Wisconsin. He has been suspended from all three state jurisdictions since February 2015. In Minnesota and Kentucky, Stewart was suspended for failing to pay attorney registration fees.[2] Stewart was also placed on involuntary restricted status in Minnesota for failing to comply with continuing legal education requirements.

In February 2016, the USPTO notified the Director that it had excluded Stewart from practice. According to the USPTO, Stewart engaged in multiple forms of professional misconduct in proceedings before that agency. First, the USPTO found that Stewart neglected the patent application of his client, F.W.; failed to communicate with her; and misappropriated $8,000 in unearned fees. Stewart told F.W. that he would file her patent application within 2 or 3 weeks of receiving her paperwork. F.W. provided Stewart her notes and drawings and then checked on the status of her application 3 weeks later. Stewart told F.W. that he had not yet worked on her application, attributing the delay to family medical issues and injuries he had suffered from a bicycle accident. He never completed the patent application and stopped responding to F.W.'s communications. Nonetheless, Stewart cashed F.W.'s two advance-fee checks totaling $8,000 and failed to return these unearned fees even after F.W. terminated the representation and demanded a refund. Stewart cashed F.W.'s second check on the same day that F.W. terminated the representation.

Second, the USPTO found that Stewart engaged in the unauthorized practice of law. Stewart has been ineligible to handle USPTO matters since February 2015, when he was no longer an active member of any state bar. But between March 2015 and June 2015, Stewart filed multiple trademark matters on behalf of clients as "attorney of record" and as a purported member of the Wisconsin bar.

Finally, the USPTO found that Stewart failed to cooperate with its disciplinary proceedings. Between November 2014 and July 2015, the USPTO sent Stewart multiple requests for information via certified mail. Stewart personally signed for several of them, but never responded. Further, Stewart failed to respond to the USPTO's formal complaint, notice of hearing and order, and default-judgment notice, all of which were signed for at Stewart's address. On December 16, 2015, the USPTO entered a default judgment excluding Stewart from practice, concluding that Stewart intentionally violated multiple federal regulations governing practice before the USPTO; caused harm to F.W.; and failed to acknowledge, defend, or rectify his misconduct.

On July 14, 2016, the Director served Stewart by mail—at the same Wisconsin address on file with the USPTO—with a notice and petition for disciplinary action seeking reciprocal discipline under Rule 12(d), Rules on Lawyers Professional Responsibility (RLPR). Stewart did not respond, and upon the Director's motion, we deemed the allegations in the petition admitted. *In re Stewart*, No. A16-1309, Order at 1-2 (Minn. filed Sept. 12, 2016); *see* Rule 13(b), RLPR. The Director proposes that

which are deemed admitted because of Stewart's failure to respond. *See* Rule 13(b), Rules on Lawyers Professional Responsibility (RLPR).

2. The record does not indicate why Stewart was suspended in Wisconsin.

we disbar Stewart. Stewart failed to respond or appear at oral argument.

## ANALYSIS

■ "Because the allegations in the petition have been deemed admitted, the only question before us is whether to grant the Director's petition for reciprocal discipline." *In re Huff*, 872 N.W.2d 750, 753 (Minn. 2015); *see also* Rule 12(d), RLPR ("[A] final adjudication in another jurisdiction that a lawyer had committed certain misconduct shall establish conclusively the misconduct for purposes of disciplinary proceedings in Minnesota," unless we "determine[ ] otherwise."). In a reciprocal discipline case, we "impose the identical discipline" as the other jurisdiction unless (1) the "discipline procedures in the other jurisdiction were unfair," or (2) "the imposition of the same discipline would be unjust or substantially different from discipline warranted in Minnesota." Rule 12(d), RLPR. "The purpose for imposing identical disciplinary sanctions is to prevent a sanctioned attorney from avoiding the consequences of misconduct by simply moving his or her practice to another state." *In re Meaden*, 628 N.W.2d 129, 132 (Minn. 2001) (citation and internal quotation marks omitted).

## I.

■ We must first determine the "identical discipline" in Minnesota for the discipline the USPTO imposed on Stewart: "exclusion from practice" before the USPTO. *See* Rule 12(d), RLPR; 37 C.F.R. § 11.20(a)(1) (2016). Minnesota does not have any sanction called "exclusion from practice." The Director argues that this sanction is equivalent to disbarment in Minnesota.[3]

■ In addressing the Director's argument, we must determine how the USPTO's regulations define "exclusion from practice." "As with statutes, when interpreting a regulation, the court first determines whether the regulation is clear or ambiguous on its face." *Indep. Sch. Dist. No. 12 v. Minn. Dep't of Educ.*, 788 N.W.2d 907, 912 (Minn. 2010) (citation and internal quotation marks omitted); *see also In re Cities of Annandale & Maple Lake*, 731 N.W.2d 502, 513-14 (Minn. 2007) (stating that we rely on a plain-language analysis when a federal regulation's language is "clear and capable of understanding"). We interpret an unambiguous regulation "according to the common and approved usage of its words and phrases." *Indep. Sch. Dist. No. 12*, 788 N.W.2d at 912.

The USPTO's regulations do not define the term "exclusion." *See* 37 C.F.R. § 11.1 (2016). The common definition of "exclude" is "to bar from participation, enjoyment, consideration, or inclusion"; in other words, "to eject." *Webster's Third New International Dictionary* 793 (2002). Both "disbar" and "suspend" are synonyms of "exclude." *Id.*

The Director argues that the structure and text of the USPTO regulation providing the types of discipline, when compared to the analogous Minnesota rule, make clear that exclusion is equivalent to disbarment. Both rules contain a hierarchy of discipline, listing the most severe punishments first and the least burdensome punishments last. *Compare* 37 C.F.R. § 11.20(a) (listing types of discipline, including (1) "[e]xclusion from practice before the Office," (2) suspension, (3) repri-

---

**3.** Although we have not previously considered the issue, we conclude that reciprocal discipline applies to disciplinary actions by the USPTO. Other states have also imposed reciprocal discipline based on the USPTO's disciplinary actions. *See In re Peirce*, 122 Nev. 77, 128 P.3d 443, 444 (2006); *In re Perkowski*, 94 A.D.3d 122, 940 N.Y.S.2d 657, 658-59 (2012).

mand, and (4) probation), *with* Rule 15(a), RLPR (listing types of discipline, including (1) "[d]isbar the lawyer," (2) suspension, (3) payment of costs, (4) probation, (5) reprimand, and so on). Both exclusion and disbarment are listed first within their respective hierarchies, with suspension listed as a lesser form of discipline. *See* 37 C.F.R. § 11.20(a)(1)-(2); Rule 15(a)(1)-(2), RLPR.

Even so, these hierarchies do not fully resolve the issue because "exclusion from practice" before the USPTO carries a different consequence than disbarment in Minnesota. An attorney who has been excluded from practice before the USPTO "shall be eligible to apply for reinstatement" after "five years from the effective date of the exclusion." 37 C.F.R. § 11.60(b) (2016). By contrast, there is no specific time period after which a disbarred attorney in Minnesota is permitted to petition for reinstatement. *See* Rule 18, RLPR. In suspending attorneys, however, we do specify the amount of time after which the attorney may petition for reinstatement. *See, e.g., In re McPhee*, 865 N.W.2d 70, 75 (Minn. 2015) (suspending an attorney with no right to petition for reinstatement for 2 years). Thus, "exclusion from practice" before the USPTO is equivalent to Minnesota's discipline of an indefinite suspension with no right to petition for reinstatement for a minimum of 5 years. *See People v. Warnock*, No. 16PDJ073, 2016 WL 7383715, at *1 (Colo. O.P.D.J. Dec. 12, 2016) (concluding in a reciprocal discipline case that the identical discipline to "exclusion from practice" before the USPTO is a "suspension with no right to reapply for three years" because Colorado does not have a 5-year suspension); *see also In re Bender*, 201 N.J. 416, 991 A.2d 215, 215 (2010) (order) (suspending an attorney for 3 years as reciprocal discipline for "exclusion from practice" before the USPTO).

We therefore hold that, in a reciprocal discipline case, the identical discipline in Minnesota to "exclusion from practice" before the USPTO is an indefinite suspension from the practice of law with no right to petition for reinstatement for a minimum of 5 years.

## II.

■ We must next consider whether the "discipline procedures in the other jurisdiction were unfair." Rule 12(d), RLPR. Another jurisdiction's proceedings are fair if they are "consistent with fundamental fairness and due process." *In re Hawkins*, 834 N.W.2d 663, 668 (Minn. 2013) (citation and internal quotation marks omitted). "[W]e review the underlying record to see if the attorney received notice of the proceedings and the allegations against him, and had the opportunity to respond to those allegations and offer evidence of mitigating circumstances." *In re Overboe*, 867 N.W.2d 482, 486 (Minn. 2015). "We have consistently held that when the attorney is given notice of the hearing and an opportunity to respond to the allegations, the proceedings are fair." *Id.*

Here, Stewart was given notice of the USPTO proceedings and the allegations against him. He received and signed for several communications requesting information for his disciplinary investigation. Stewart then received a complaint, notice of hearing and order, and default-judgment notice, all of which were received and signed for at Stewart's address. The USPTO allows attorneys the opportunity to respond in disciplinary proceedings, but Stewart failed to do so. *See* 37 C.F.R. §§ 11.36 (providing for an answer to the complaint), 11.44 (providing for a hearing before a hearing officer), 11.55 (2016) (providing for an appeal of the hearing officer's decision). Accordingly, the USPTO's disci-

pline procedures were consistent with fundamental fairness and due process.

## III.

We turn to the final question of whether "the imposition of the same discipline" that the USPTO imposed—an indefinite suspension with no right to petition for reinstatement for a minimum of 5 years—"would be unjust or substantially different from discipline warranted in Minnesota." Rule 12(d), RLPR. The question "is not whether we might have imposed different discipline had [Stewart's] disciplinary proceedings originated in Minnesota, but rather whether the discipline imposed by [the USPTO] is unjust or substantially different from discipline warranted in Minnesota." *Overboe*, 867 N.W.2d at 487 (citation and internal quotation marks omitted).

The USPTO's decision conclusively establishes Stewart's misconduct for this proceeding. *See* Rule 12(d), RLPR. Here, the USPTO found that Stewart intentionally misappropriated $8,000 in client funds, failed to perform work for or communicate adequately with a client, knowingly practiced law on behalf of multiple clients while suspended, and failed to cooperate with the USPTO's disciplinary proceedings. Stewart violated several federal regulations that mirror the Minnesota Rules of Professional Conduct.[4] Moreover, Stewart's misconduct harmed his client, and Stewart failed to prove mitigating factors. The USPTO also found several aggravating factors, including Stewart's dishonest motive in misappropriating funds, his failure to acknowledge or rectify his conduct,

and his pattern of neglecting communications.

An indefinite suspension with no right to petition for reinstatement for 5 years is not unjust discipline for Stewart's misconduct. Misappropriation of client funds is, in itself, "particularly serious misconduct" that "usually warrants disbarment absent clear and convincing evidence of substantial mitigating factors." *In re Garcia*, 792 N.W.2d 434, 443 (Minn. 2010); *see also In re Rambow*, 874 N.W.2d 773, 775, 780 (Minn. 2016) (disbarring an attorney who misappropriated more than $1,000 of client funds). Stewart committed misappropriation by "performing no work on [client] matters and never returning the funds" that F.W. advanced. *In re Lundeen*, 811 N.W.2d 602, 608 (Minn. 2012). And Stewart presents no mitigating circumstances to lessen the severity of his misconduct.

Finally, although the question is a close one, an indefinite suspension with no right to petition for reinstatement for a minimum of 5 years is not *substantially* different from the discipline warranted in Minnesota. The Director argues that disbarment is appropriate because we would have disbarred Stewart had his disciplinary action originated in Minnesota. But that is not the question before us in a reciprocal discipline case. *Overboe*, 867 N.W.2d at 487. Rather, we will impose the identical discipline if it is not "*substantially* different" from the discipline warranted in Minnesota. Rule 12(d), RLPR (emphasis added).[5]

---

4. *Compare* 37 C.F.R. §§ 11.103 (diligence), 11.116(d) (failure to return fees), 11.505 (unauthorized practice of law), 11.801(b) (failure to cooperate with an investigation), 11.804(c) (dishonesty, fraud, deceit, or misrepresentation), *and* 11.804(i) (2016) (fitness), *with* Minn. R. Prof. Conduct 1.3 (diligence),

1.16(d) (failure to return fees), 5.5(a) (unauthorized practice of law), 8.1(b) (failure to cooperate with an investigation), 8.4(b) (fitness), *and* 8.4(c) (dishonesty, fraud, deceit, or misrepresentation).

5. By imposing reciprocal discipline on Stewart, we express no opinion on whether the

An indefinite suspension with no right to petition for reinstatement for a minimum of 5 years is a lengthy suspension. And, under our rules and case law, reinstatement following a lengthy suspension is not automatic; rather, it requires a substantial showing by the attorney. Just like a disbarred attorney, Stewart will only be reinstated if he proves by clear and convincing evidence that he has undergone moral change, among other requirements. *See In re Griffith*, 883 N.W.2d 798, 800-01 (Minn. 2016) (explaining what a suspended attorney must prove to be reinstated); *see also* Rule 18, RLPR. We therefore impose reciprocal discipline and indefinitely suspend Stewart with no right to petition for reinstatement for a minimum of 5 years.

Accordingly, we order that:

1. Respondent Alan Richard Stewart is indefinitely suspended from the practice of law in the State of Minnesota, effective 14 days from the date of this opinion, with no right to petition for reinstatement for a period of 5 years from the effective date of his suspension.

2. Stewart shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals), and shall pay $900 in costs, *see* Rule 24(a), RLPR.

3. Stewart may petition for reinstatement under Rule 18(a)-(d), RLPR. Reinstatement is conditioned on successful completion of the written examination required for admission to the practice of law by the State Board of Law Examiners on the subject of professional responsibility and satisfaction of continuing legal education requirements. *See* Rule 18(e), RLPR.

Dissenting, Gildea, C.J., and Hudson, J.

Director could seek to have Stewart disbarred

## DISSENT

GILDEA, Chief Justice (dissenting).

I respectfully dissent. The U.S. Patent and Trademark Office ("USPTO") excluded respondent Alan R. Stewart from practice for misappropriating $8,000 in client funds, neglecting a client matter, failing to communicate with a client, engaging in the unauthorized practice of law, and failing to cooperate with the disciplinary proceedings. I agree with the majority that the discipline in Minnesota identical to exclusion before the USPTO is an indefinite suspension with no right to petition for reinstatement for 5 years ("5-year suspension"). I also agree with the majority that the discipline warranted in Minnesota for Stewart's misconduct is disbarment. I disagree with the majority on whether a 5-year suspension is substantially different than disbarment. Because a 5-year suspension is substantially different than disbarment, I would not impose reciprocal discipline and instead would disbar Stewart.

### I.

In reciprocal discipline cases, we are not required to impose the same discipline as the other jurisdiction. Instead, when a lawyer has been publicly disciplined in another jurisdiction, we "may thereafter impose the identical discipline unless it appears that the discipline procedures in the other jurisdiction were unfair, or *the imposition of the same discipline would be* unjust or *substantially different from discipline warranted in Minnesota.*" Rule 12(d), Rules on Lawyers Professional Responsibility (RLPR) (emphasis added). Based on the plain language of this rule, we "may not impose identical discipline if to do so would ... result in discipline substantially different from that warranted in Minnesota." *In re Meaden*, 628 N.W.2d 129, 133

by filing a petition under Rule 12(a), RLPR.

(Minn. 2001) (citing Rule 12(d), RLPR); *see also In re Pennington*, 706 N.W.2d 482, 482 (Minn. 2005) (order) (imposing different discipline in a reciprocal discipline case because the discipline imposed by the other jurisdiction was substantially different from the discipline warranted in Minnesota).

The question, then, is whether the discipline imposed by the USPTO is "substantially different from discipline warranted in Minnesota." Rule 12(d), RLPR. To answer this question, I must (1) determine the discipline we would impose on Stewart, and (2) determine if a 5-year suspension is substantially different from the discipline warranted in Minnesota.

Stewart misappropriated $8,000 from his client F.W. because Stewart took $8,000 from her as advanced fees, performed no work for her, and did not return the funds. *See In re Lundeen*, 811 N.W.2d 602, 608 (Minn. 2012) (stating that a lawyer misappropriates client funds by "performing no work on [client] matters and never returning the funds to the clients"). Misappropriation of client funds "is particularly serious misconduct" that "usually warrants disbarment absent clear and convincing evidence of substantial mitigating factors." *In re Garcia*, 792 N.W.2d 434, 443 (Minn. 2010) (citation omitted) (internal quotation marks omitted); *see also In re Rambow*, 874 N.W.2d 773, 774-75, 778 (Minn. 2016) (disbarring an attorney who, among other things, misappropriated $1,393 from two clients); *In re Swokowski*, 796 N.W.2d 317, 319-26 (Minn. 2011) (disbarring an attorney for, among other things, misappropriating $1,000; forging a client's endorsement on a settlement check; failing to cooperate with the Director; and neglecting several client matters); *In re Randall*, 562 N.W.2d 679, 683 (Minn. 1997) (disbarring an attorney for misappropriating $4,000, charging a

client for services that were not performed, forging a client's name on a settlement check, and making misrepresentations to the Director). Stewart presents no mitigating circumstances. As the majority acknowledges, the discipline warranted in Minnesota for Stewart's misconduct is disbarment.

I must next determine if the identical discipline of a 5-year suspension is substantially different than disbarment. It is true, as the majority notes, that a 5-year suspension is lengthy and that reinstatement is not automatic for either an attorney subject to such a suspension or a disbarred attorney because both must petition for reinstatement. *See* Rule 18, RLPR. The majority, however, fails to consider that we have treated disbarment much differently than lengthy suspensions.

"[R]einstatement after disbarment is the rare exception to the rule." *In re Ramirez*, 719 N.W.2d 920, 924 (Minn. 2006); *see also In re Anderley*, 696 N.W.2d 380, 385 (Minn. 2005) (referring to a disbarred, later reinstated, attorney as "the rare individual who has met the heavy burden of demonstrating his rehabilitation ..."); *In re Smith*, 220 Minn. 197, 19 N.W.2d 324, 326 (1945) ("While [the] court should be slow to disbar, it should be even more cautious in readmitting an attorney to a position of trust." (citations omitted)). We have never said that it is rare to reinstate attorneys who had to petition for reinstatement following lengthy suspensions. And in the few cases in which we have reinstated disbarred attorneys, we have done so only after more than 5 years had passed. *See In re Lieber*, 834 N.W.2d 200, 202, 211 (Minn. 2013) (reinstating an attorney 8 years after he was disbarred); *Ramirez*, 719 N.W.2d at 922, 928 (over 8 ½ years); *Anderley*, 696 N.W.2d at 382 (13 years); *In re Trygstad*, 472 N.W.2d 137, 139 (Minn. 1991) (7 ½ years); *In re Wegner*, 417

N.W.2d 97, 98, 100 (Minn. 1987) (8 years). As a result, there is a substantial difference between a 5-year suspension and disbarment.

Decisions from other courts lend further support to my conclusion that there is a substantial difference between a 5-year suspension and disbarment. In reciprocal discipline cases in which another jurisdiction suspended an attorney for misappropriating client funds, other courts have chosen to disbar the attorney. *See In re Grossman*, 940 A.2d 85, 86-87, 86 n.2 (D.C. 2007) (disbarring an attorney in a reciprocal discipline case who had been indefinitely suspended in Massachusetts for intentionally converting client funds and stating that a lawyer indefinitely suspended in Massachusetts could apply for reinstatement after 5 years); *In re Ladas*, 798 A.2d 1067, 1067-68 (D.C. 2002) (disbarring an attorney in a reciprocal discipline case who had been suspended for 2 years in New York for, among other things, misappropriating client funds); *State ex rel. Neb. State Bar Ass'n v. Van*, 251 Neb. 196, 556 N.W.2d 39, 42-44 (1996) (disbarring an attorney in a reciprocal discipline case who had been suspended for 1 year in Illinois for, among other things, failing to refund advanced fees to which the attorney was not entitled).

When we "determine[ ] that imposition of the identical discipline" in a reciprocal discipline case "is not appropriate, [we] may order such other discipline ... as [we] deem[ ] appropriate." Rule 12(d), RLPR. Imposition of identical discipline in this case is not appropriate because the discipline imposed by the USPTO is substantially different than the discipline warranted in Minnesota for Stewart's misconduct. Stewart's misconduct includes the misappropriation of client funds, which is "among the most serious acts of misconduct a lawyer can commit." *In re Swanson*,

405 N.W.2d 892, 893 (Minn. 1987); *see also In re Swanson*, 343 N.W.2d 662, 663 (Minn. 1984) (describing the conduct committed by the attorney resulting in his disbarment). Accordingly, I would disbar Stewart.

HUDSON, Justice (dissenting).

I join in the dissent of Chief Justice Gildea.